## McGREGOR and others *vs.* COMSTOCK.

By the common law rule of descents the alienage of a common grandfather does not impede descent between cousins, the children of brothers who were citizens and capable of transmitting by descent.

The rule that the descent between brothers is immediate, and not impeded by the alienage of their father, holds also between one of the brothers and the rep-resentative of the other, and also between the representatives of both of them.

APPEAL from the supreme court, where the action was eject-ment for land situated in the city of New-York. The plain-tiffs claimed to recover as heirs of their cousin John McGregor jun. who died prior to 1830, seised of the premises, and the question was whether the descent to them was impeded by the alienage of the common grandfather through whom the pedi-gree was traced. The plaintiffs were nonsuited on the trial, and after judgment they appealed to this court.

*J. Ellsworth,* for appellants.

*J. A. Collier,* for respondent.

PRATT, J. John McGregor, senior, a native of Scotland, came to the city of New-York some time previous to the year

1792, and was naturalized there in that year. In 1795, he purchased the premises in question in this suit, and died in 1802, leaving a son, his sole heir at law, born in 1800. John jun. the son, was sent to England in 1807. He left there for the East Indies in 1818; since which time he has not been heard of. He was never married, and it is claimed that he should be deemed to have died in 1825.

William McGregor, a brother of John, senior, came from Scotland, and resided in Saratoga county, and was naturalized there in 1813. He died in 1833, leaving the plaintiffs his heirs at law. The plaintiffs claim to recover as heirs at law of John McGregor, jun. They were nonsuited at the trial on the gound that their grandfather, the father of John McGregor, sen. and William died an alien, and as they were compelled to trace their pedigree and relationship to John McGregor, sen. through the grandfather, his alienism impeded the descent to them.

This was the only question discussed upon the argument, and I shall in the examination of this case confine myself to this question.

It is somewhat difficult to ascertain from the testimony in this case, whether John McGregor, jun. had during his life such seisin in fact of the premises in question as would make it necessary to deduce title from him as the person last seised, as he died before our revised statutes and whilst the common law rule was still in force. But if the view which I take of the law of this case be correct, that point is immaterial, and I shall therefore assume that seisin in him was sufficiently proved.

The question then is simply this. Under the common law rule of descents, did alienism in the common grandfather impede the descent between cousins whose immediate ancestors were brothers, and capable of transmitting by descent?

It is admitted that the plaintiffs represent their ancestor William McGregor, and therefore stand in the same position as he would if he was still alive and the suit had been brought by him. It is also conceded that William might have inherited directly from his brother John McGregor, senior, notwithstanding the alienism of their common father. But it is claimed

McGregor *v.* Comstock.

that he could not inherit from his nephew, the son of John ; that although the descent between brothers is immediate, and therefore the want of inheritable blood in the common father does not impede, yet the descent between the descendants of brothers is subject to a different rule and is impeded by the want of inheritable blood in such common ancestor. It was upon this distinction that the case was decided in the court below, but after a careful examination of the authorities, I am unable to find that any such distinction does, in fact, exist. There is no authority for applying any different rule to a case of descent between brothers than to a case of descent between their representatives. In both cases, the pedigree or relationship is traced through the common ancestor, but the descent or inheritance is only traced through the brothers directly from one to the other.

It is laid down by Blackstone as the great and fundamental rule in the law of descents, to which there is no exception save the case of half bloods, that "he who would have been heir to the father of the deceased, shall also be heir to the son." (2 *Black. Com.* 223.) The inquiry in this case therefore should be, who would have been heir to John McGregor, senior? If the descent between brothers is immediate, and not affected by alienism of the common ancestor, the answer is obvious. It would have been William, the father of the plaintiffs. He would have been the heir, not as the representative of his father, but as the immediate representative of his brother. He was, therefore, by a necessary deduction, the heir to John, junior, the intestate. This conclusion settles the question, unless there can be found in the authorities some arbitrary rule which would make this case an exception to the general rule above laid down from Blackstone. I have therefore examined the authorities, both English and American, at some length, and it will be seen that they recognize no such exception, but directly support the rule.

It is true that Lord Coke, in his commentaries upon Littleton, lays down a different doctrine, and holds that alienism in the common father impedes the descent between brothers. It will

McGregor *v.* Comstock.

be séen, however, that he recognizes no such distinction as is claimed in this case to exist. He says : " If an alien arrives in England and has two sons born there, they are of course natural born subjects; and if one purchase land and die without issue, his brother can not inherit as his heir, because he must deduce his title by descent through his father, who had no inheritable blood." It was upon this question that the great judicial conflict took place in the celebrated case of *Collingwood* v. *Pace*, in which the question was argued before all the judges of England, and decided by seven judges to three, against the doctrine of Lord Coke. All the judges gave opinions seriatim, which are reported in 1 *Keble*, commencing at page 65. (*See also* 1 *Vent.* 413 ; *O. Bridgman's Rep.* 410.) In that case Robert Ramsay, an alien born in Scotland before the union, had four children also born there, two of whom, John and George, came into England and were naturalized by act of parliament. George died leaving a son born in England, who was the lessor of the plaintiff in that suit. John, senior, died seised of lands, without issue. The action was brought in behalf of the son of George, as heir to his uncle John. The court, as before observed, held that the descent between brothers was immediate, and therefore the alienism of the common ancestor was no impediment, and the nephew was entitled to recover. The prevailing opinions of all the judges throw much light upon the subject ; but that of Lord Hale, as reported in Ventris, is the most clear and conclusive. He insisted that the descent between brothers was an immediate descent ; that the father, although a *medium differens sanguinis,* was not a *medium differens hæreditatis,* and that alienism in the latter line only impeded the descent. That in tracing the latter line, or line of inheritance between brothers or their descendants, it was not necessary to name the common ancestor ; and that alienism in any ancestor whom it was not necessary to name in tracing such inheritance or descent, does not impede. He examined all the cases bearing upon the question, and pointed out, by a variety of illustrations, the distinctions between them ; to some of which cases I will briefly allude.

The first was Hobby's case, reported in *Cro. Jac.* 539, *Palmer* 19. William Hobby had issue, Philip and Mary, and was attainted for treason, and died. Philip purchased lands and died without issue. It was held that Mary should inherit notwithstanding the attainder of the father; as the descent between them was immediate, and not through the father. It may be remarked here that attainder had substantially the same effect upon descent as alienism. Indeed, under some circumstances, attainder will impede the descent where alienism would not impede. But I know of no case in which the opposite is true. Adjudications, therefore, showing the effect of attainder upon descents, are good authority upon the effect of alienism.

In Grey's case (*Dyer*, 274) a younger brother had issue, was attainted for treason, and died. His elder brother, having a petition of right, died without issue. It was held that the issue of the younger brother could not inherit. They represented their father, and must trace the descent through him; and as he could not inherit, his representatives could not.

In *Courtney's case*, cited by Ld. Hale, one Henry Courtney had issue, Edward, and was afterwards attainted and died. Edward purchased lands and died without issue. It was held that the sisters and sisters' children of Henry could not inherit. That they must claim as representing Henry, and deduce their title through him, and his want of capacity would therefore impede—that the representative could be in no better position than the person whom he represents.

Lord Hale, in commenting upon this case, conceded its correctness, and in pointing out the difference between it and the principal case under consideration, he says—" Suppose the grandfather of Edward had been attainted, and not Henry the father. This could not have impeded the descent from Edward to his aunts, because the attainder had been paramount that consanguinity which was between Henry and his sisters as brothers and sisters." This supposed case, substituting alienism for attainder, it will be seen, is precisely the case at bar; and unless Lord Hale was mistaken in his views, settles this case.

These are the only English cases which I have been able to find. Soon after the decision in the case of *Collingwood* v. *Pace*, the statute of 11 William 3d was passed, which swept away these artificial distinctions, and enabled natural born subjects to inherit the lands of their ancestors notwithstanding the alienism of some person through whom the descent must be traced.

On examining the elementary writers upon the subject it will be found that they have followed the decision of the court in the case of *Collingwood* v. *Pace*, and assumed it to be good law. They clearly establish these two positions, which are merely corrollaries to be deduced from the reasoning of the judges in that case. First. That it is not necessary to name the common ancestor in deducing title from a brother or other collateral relative : and Secondly. That alienism or attainder in any person whom it is not necessary to name, in deducing such title, will not impede. In support of the first position, I cite from Blackstone. " But though the ancestor be the root of the inheritance, yet with us it is not necessary to name him in making out the pedigree or descent, for the descent between brothers is held to be an immediate descent, and therefore may be made by one brother or his representative to or through another brother without mentioning the common father. If Geoffrey Stiles hath two sons, John and Francis, Francis may claim as heir to John without naming their father Geoffrey ; and so the son of Francis may claim as cousin and heir to Matthew, the son of John, without naming the grandfather, viz. as son of Francis who was the brother of John the father of Matthew." (2 *Blackstone*, 226.) This is precisely as the plaintiffs claim in the present case. In Tomlin's Law Dictionary, 547, it is said, " That the descent between brothers is an immediate descent, and therefore title may be made by one brother *or his representatives to* or *through* another brother without mentioning the common father." So in 12 *Mod. R.* 619, it was laid down as a rule of pleading, " that if the son will make himself heir to the uncle he must show *coment* and make the father a *medium*, that is, that the inheritance descends to him as *consanguineo et*

*hæredi,* viz. son and heir of such an one who is brother to the uncle."

In support of the latter position Baron Hawkins says, "The attainder of a person, who need not be mentioned in the conveyance of descent, does no harm, let the ancestor be never so remote, and *a fortiori* where one may claim as immediate heir to another, without deriving the descent through any other, he shall not be barred by the attainder, and he cites the case of brothers inheriting from each other." (*Hawkins' P. C. b.* 2, *ch.* 49, § 49.) So in *Cruise's Dig. vol.* 3, *p,* 370, it is said "That one may inherit from his brother notwithstanding the alienism of the father, for although the father is medium *differens sanguini,* he is not *medium differens hæreditatis.* (*See also Com. Dig. tit. Alien, C.; Bac. Ab. Alien, C.; Chitty on Descents,* 354.)

It seems, therefore, that by the rules of the common law the alienism of the grandfather of the plaintiffs is no bar to the action in this case, and I am unable to find any reported case in this country, which conflicts in the least with the rules of the common law. The first case in our own courts is *Jackson* v. *Green,* (7 *Wend.* 333.) In that case one Felix Cunningham, a naturalized citizen, had purchased land, and died intestate, and without issue. The claimants were children of one James Doran, a cousin of the intestate, their mothers being sisters and aliens. It was held that they could not recover. The claimants were compelled to make title through their grandmother and great-aunt, and were directly within the cases of *Gray* and of *Courtney* above referred to.

The next case is *Jackson* v. *Fitzsimmons,* (10 *Wend.* 9.) In that case the son of an alien claimed to inherit the lands of his uncle, his father's brother. The plaintiff claimed as representative of his father, who was an alien, and he could of course be in no better position than his father would have been in had he been alive and brought the suit. The case of *The People* v. *Irving,* (21 *Wend.* 128,) was a case under our revised statutes, and can not, therefore, affect this case.

In the case of *The Lessee of Levy and others* v. *McCarty,*

(6 *Pet.* 102,) the claimants were grandchildren to one Leipman Cohen, a maternal uncle of the person who died seised of the land in question. The grandfather and his sister, the mother of the intestate, were both aliens. It was therefore precisely *Courtney's case,* and the court held they could not inherit.

These are all the cases which have come under my notice, and they do not conflict with the English authorities upon the same subject. It follows, therefore, that the decisions of the judge at the circuit, and of the supreme court, were erroneous, and the judgment must be reversed *venire de novo.*

Judgment reversed.