ALBERT LUHRS, Appellant, *v.* BARBARA EIMER, Respondent.

Where an alien female intermarries with a citizen, by virtue of the marriage she becomes a citizen and capable of taking and holding lands in this State by purchase or descent.   (U. S. Stat. at large, vol. 10, p. 604; 1 R. S., 719, § 8.)

The words "resident alien," in the provision of the act of 1845 "to enable resident aliens to take and hold real estate" (§ 4, chap. 115, Laws of 1845), which enables those answering the description of heirs of a deceased alien resident to take, whether they are citizens or aliens, do not include or designate a naturalized citizen.

The incapacity therefore of alien heirs of a naturalized citizen, who died intestate, to take lands of which he died seized, was not removed by that statute.

So, also, the alien children of a deceased brother or sister of the intestate, who was an alien, are not within the provisions of the statute (1 R. S., 754, § 22), which saves a person "capable of inheriting," from being barred of the inheritance by reason of the alienage of any ancestor. Alienism is an impediment to taking lands by descent only when it comes between the stock of descent and the person claiming to take; if some of the persons who answer the description of heirs are incapable of taking by reason of alienage, they are disregarded, and the whole title vests in those heirs competent to take, provided they are not compelled to trace the inheritance through an alien.

The common law principle, that the descent between brothers, or a brother and sister, is immediate and is not impeded by the alienage of the father, was not changed by the statute of 1786 (§ 4, chap 12, Laws of 1786), which changed the order of descent by enabling the father of a decedent to inherit in default of lineal heirs.

J., a naturalized citizen, died in 1866 intestate, and seized of certain real estate.   He left him surviving his widow, his father, the defendant B., who was his sister, and the wife of a citizen, and two alien children of a deceased sister, who was an alien.   The widow died in 1870.   B., in 1873, by judgment in an action of ejectment, wherein she founded her claim upon her title by descent, recovered possession of the premises.   She contracted to sell the same to plaintiff, in 1877.   Upon submission of the controversy as to her title under section 1279 of the Code of Civil Procedure,

*held,* that the title to the premises vested in B. upon the death of her brother, that the act of 1874 (chap. 261 of Laws of 1874), amending the said provision of the act of 1845, by inserting after the words "resident alien," the words "or any naturalized or native citizen," could not operate to divest her estate thus acquired, and that, therefore, she could give a good title and was entitled to a performance of the contract.

(Argued February 1, 1880 ; decided February 24, 1880.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, in favor of defendant, rendered upon a case submitted under section 1279 of the Code of Civil Procedure. (Reported below, 15 Hun, 399.)

The facts submitted were, in substance, as follows : The parties hereto, in February, 1877, entered into an agreement by which the defendant contracted to sell and convey, and the plaintiff agreed to purchase, certain premises situated in the city of New York. The plaintiff refused to accept a conveyance upon the ground that the title of the defendant to the land was defective. Jacob Schlegel, a native of Germany, came to this country in the year 1847, intending to become a citizen, and was naturalized in 1852. On the 1st day of May, 1866, he received a conveyance, and became the owner of the land in question. He died intestate in the city of New York, on the 13th day of May, 1866, seized in fee of said premises, and leaving him surviving his widow, Rebecca Schlegel ; his father Ludwig Schlegel, a native of Germany, who never visited this country, and who died June 22, 1866 ; and the defendant, who was his sister, and who came to this country in the year 1857, and previous to the death of her brother Jacob Schlegel, married one Gottfried Bauer, who was at the time a citizen of the United States. The defendant became naturalized subsequent to the death of her said brother. After the death of her said husband, she married Christian Eimer. The said Jacob Schlegel also left him surviving a nephew, Louis Gompper, who came to this country from Germany in the year 1864, and was then sixteen years of age ; he was naturalized in the year

1870 ; also a niece, Catherine Gompper, who was a native of Germany, and came to this country in the year 1865, and was then fifteen years of age. She has not been naturalized. The nephew and niece are the children of Catherine Gompper, a sister of the said Jacob Schlegel, who was a native of Germany, and died there in the year 1852. Rebecca, the widow of the intestate, died in December, 1870, leaving a will by which she devised to Conrad Fegh a life estate in the premises, remainder to her brothers and sisters. In April, 1871, defendant commenced an action of ejectment to recover the premises against Conrad Fegh, who was then in possession, she claiming title by descent; and recovered judgment therein in June, 1873, under which she was put in possession.

*Wm. F. Pitshke*, for appellant. The act of 1845 (chap. 115) must be construed to embrace naturalized citizens. *Goodrich* v. *Russell*, 42 N. Y., 177, 182; *Wright* v. *Sadler*, 20 id., 328; *People* v. *Elliott*, 12 Hun, 365; *Scofield* v. *Collins*, 3 Cow., 89; *Murray* v. *N. Y. C. R. R. Co.*, 3 Abb. Dec., 339; *In re Com'rs Wash. Park*, 52 N. Y., 131–137; *Burton* v. *Burton*, 1 Abb. Dec., 274–275; *Munro* v. *Merchant*, 28 N. Y., 36; *Sutliff* v. *Forgey*, 1 Cow., 89; 5 id., 713.) On the death of Ludwig Schlegel, by virtue of the act of 1845 (chap. 115), his real estate descended to his heirs, whether aliens or citizens. (*Goodrich* v. *Russell*, 42 N. Y., 182; U. S. Const., art. 1, § 9, part 3, and art. 1, § 10, part 1; *Forgey* v. *Sutliff*, 5 Cow., 713; 28 N. Y., 36; *Jackson* v. *Adams*, 7 Wend., 367; *Duke of Cumberland* v. *Graves*, 7 N. Y., 311; *Goodell* v. *Jackson*, 20 J. R., 693; *Jackson* v. *Etz*, 5 Cow., 314, 315, etc.; *People* v. *Cutting*, 3 J. R., 1; 10 U. S. Statutes at large, ch. 71, p. 604; Act of Congress, 2 U. S. Statute at large, 153; 1 R. S. of N. Y., 719, § 8; *Burton* v. *Burton*, 1 Abb. Dec., 273; *Montgomery* v. *Dorion*, 7 N. H., 482; *Corfield* v. *Corgell*, 4 Wash. C. C., 371; *Provost* v. *Grenveaux*, Gerard R. E. [2d ed.], 53.) The grant of the Legislature to Rebecca Schlegel, in 1867, con-

veyed the estate. (*Englishbee* v. *Helmuth,* 3 N. Y., 300; *Goodrich* v. *Russell,* 42 N. Y., 179; *Townsend* v. *McDonald,* 12 id., 381; *Rutherford* v. *Greene,* 2 Wheat., 196; *Colgan* v. *McKeon,* 4 N. J., 566; 3 Wash. R. P., 445; *Anstice* v. *Brown,* 6 Pai., 448.) The descent between brothers and sisters is, under the common law, as well as under the Revised Statutes, directly and immediately, and not affected by the alienism of the common father. (13 N. Y., 541, 542; 2 Black. Com., 226; 2 Kent's Com., 55; *Collingwood* v. *Pace,* 1 Ventris, 413; *McGregor* v. *Comstock,* 3 N. Y., 408; *McLean* v. *Swanton,* 13 id., 542; *Parish* v. *Ward,* 28 Barb., 328; *Smith* v. *Mulligan,* 11 Abb. Pr. [N. S.], 438.) The act of 1871 (chap. 400) removed any disability of Louis and Catharine Gompper. (*Parish* v. *Ward,* 28 Barb., 328; 2 Black. Com., 250; *Priest* v. *Cummings,* 16 Wend., 629; Co. Litt., 2; *Heney* v. *Brooklyn B. So.,* 39 N. Y., 339; *Priest* v. *Cummings,* 20 Wend., 339, 347; *Priest* v. *Cummings,* 16 id., 628, 629, 630; 4 Kent's Com., 412; *Tiney* v. *People,* 8 Mich., 128; *Commonwealth* v. *Duane,* 1 Binn., 601, 608; *People ex rel. Grissler* v. *Fowler,* 55 N. Y., 675; *Yeaton* v. *United States,* 5 Cranch, 281; *Gale* v. *Wells,* 7 How. Pr., 191; *Inkey* v. *Goodwin,* 4 Moore & Payne, 341, 351.) If Barbara Eimer took as heir, and her interest in the entire estate was not affected by the act of 1871, under chapter 261, Laws of 1874, and chapter 38, Laws of 1875, the estate vested in her and Louis and Catharine Gompper. (*Dexter Co.* v. *Allen,* 16 Barb., 15; *Heney* v. *Brooklyn B. So.,* 39 N. Y., 340; *Jackson* v. *Vanstand,* 12 J. R., 169; *Sayme* v. *Mesner,* 8 Wend., 661; Gerard R. P. [1st ed.], 115; 2 Black. B., 202, 203; Wash. R. P., 405; *Cole* v. *Batley,* 2 Curt. C. C., 562; *Wheeler* v. *Clutterbuck,* 52 N. Y., 67.) The acts of 1874 and 1875, as to their constitutionalty, rest upon the same basis as the act of 1871, and are not violative of the constitution. (*Kennedy* v. *Wood,* 20 Wend., 230, 232, 233; 3 N. Y., 294; 39 id., 333, 337; 39 id., 337; *Priest* v. *Cummings,* 16 Wend., 627, 628; Pars. Con., vol. 3, 537; 1 R. S., 718, § 1;

*People* v. *Van Rensselaer,* 9 N. Y., 319; Bac. Law Tracts, 128; Wms. R. P., 75; 3 Wash. R. P., 404; 2 Bl. Com., 11, 12, 13; 2 Hill R. P. [4th ed.], 313; *Town of Duanesburg* v. *Jenkins,* 57 N. Y., 188, 189; *Phila.* v. *Field,* 58 Penn. St., 320; *People ex rel. Pitts* v. *Suprs. Ulster Co.,* 63 Barb., 83; *People* v. *Toynbee,* 2 Park. Cr. R., 490; *People* v. *Lawrence,* 54 Barb., 589; *Chicago* v. *Larned,* 34 Ill., 280; *Clarke* v. *Rochester,* 24 Barb., 489; 3 Pars. Con., 552; *Watson* v. *Mercer,* 8 Pet., 110; *Ayres* v. *Methodist Church,* 3 Sandf., 351, 361; *Yeaton* v. *United States,* 5 Cranch, 281; *Calder* v. *Bull,* 3 Dall., 386; *Satterlee* v. *Matthewson,* 2 Pet., 380, 412, 413; *Watson* v. *Mercer,* 8 id., 109; *Charles R. Br.* v. *Warren Br. Co.,* 11 id., 420, 539; *White River, etc.* v. *Vermont C. R. R.,* 21 Vt., 590; *Dale* v. *The Governor,* 3 Stew. [Ala.], 387, 394, 397; *Rosa* v. *Butterfield,* 33 N. Y., 668; *Moore* v. *Mayor,* 8 id., 114; *Pratt* v. *Brown,* 3 Wis., 603, 610, 613, 615; *Richmond Co., etc.* v. *Town of Middletown,* 59 N. Y., 228; *The People ex rel. Davis* v. *Comms. of Taxes,* 47 id., 501; *Burton* v. *Burton,* 1 Abb. Dec., 278; 1 Greenl. Cruise, tit. 6, chap. 1, § 30; 2 Chitty Com. Law App., 325; *Depeyster* v. *Michael,* 6 N. Y., 503.) Barbara Eimer, the wife, merely of a citizen, is herself not entitled as such to inherit from the intestate herein by the law of this State. (*Brene* v. *Insurance Co.,* 6 Otto's Rep. [U. S. Sup. Ct.], 627; *In re Pet. N. Y. and Brooklyn Bridge,* 72 N. Y., 530; *Hall* v. *Hall,* 13 Hun, 307; Cooley Const. Lim., 35; *Shirley* v. *Shirley,* 7 Blackf. [Ind.], 452, 455; *Tompkins* v. *Seeley,* 29 Barb., 212, 218.)

*Lewis S. Gobel,* for respondent. In deducing title from a brother or other collateral relative it is not necessary to name the common ancestor. Alienism in any person whom it is not necessary to name in deducing such title will not impede. (2 Black., 226, *n.;* Art. XXXV, Const. N. Y., 1777; *People* v. *Irvin,* 21 Wend., 128; *McGregor* v. *Comstock,* 3 N. Y., 408; *Levy* v. *McCarthy,* 6 Peters, 102; 1 Rev. Stat., 752; *Parish* v. *Ward,* 28 Barb., 328; *McLean* v.

*Swanton*, 13 N. Y., 535; 11 Abb. Pr., 438; *Jackson* v. *Green*, 7 Wend., 333; *Jackson* v. *Fitzsimmons*, 10 id., 9; *McCreery* v. *Somerville*, 9 Wheat., 354; *McCarthy* v. *March*, 5 N. Y., 263; *Banks* v. *Walker*, 3 Barb. Chy., 438.) An alien cannot intercept the descent to another, and the inheritance descends to the next of kin, who is competent to take, in like manner, as if no such alien existed. (*Collingswood* v. *Pace*, 1 Vent., 413; *Jackson* v. *Jackson*, 7 J. R., 214; *Orr* v. *Hodgson*, 4 Wheat., 453; *Jackson* v. *Green*, 7 Wend., 333; *Orr* v. *Hoag*, 3 Hill, 79; *Jackson* v. *Fitzsimmons*, 10 Wend., 9; *McLean* v. *Swanton*, 13 N. Y., 535; *Banks* v. *Walker*, 3 Barb. Chy., 438; *Larreau* v. *Davignon*, 5 Abb. Pr. [N. S.], 367.) Barbara Eimer was, at the time of the death of Jacob Schlegel, the wife of a naturalized citizen of the United States, and consequently was herself a citizen and capable of inheriting real estate by descent. (10 U. S. Stat. at Large, chap. 71, p. 604; 1 Rev. Stat., 721, § 35; Act of 1845, chap. 115, § 3; 1 Rev. Stat., 717, § 8; Act of 1802 [2 U. S. Stat. at Large], 153; Act of 1855 [10 U. S. Stat. at Large], chap. 71, p. 604; *Burton* v. *Burton*, 5 Am. Law Reg.; S. C., 1 Keyes, 359; S. C., 26 How. Pr., 474; *Kane* v. *McCarthy*, 8 Am. Law Reg., 482; *Kelly* v. *Owen*, 7 Wall. [U. S. Sup. Ct.], 495; *Goodrich* v. *Russell*, 42 N. Y., 183.) Louis and Catharine Gompper took no part of the real estate of the intestate by descent, as they were both aliens at the time of the death of the intestate, their uncle. (*People* v. *Conklin*, 2 Hill, 67; *Redpath* v. *Rich*, 3 Sandf., 79; *Jackson* v. *Fitzsimmons*, 10 Wend., 9; Bing. on Descent, 435; *Heney* v. *Brooklyn Benevolent Society*, 39 N. Y., 333.) The act of 1874, chapter 261, amended by chapter 38 of the Laws of 1875, does not disturb the respondent's title. (*Heney* v. *Brooklyn Benevolent Society*, 39 N. Y., 333; *Dash* v. *Van Kleeck*, 7 J. R., 477; *Wood* v. *Oakley*, 11 Paige, 400; *Butler* v. *Palmer*, 1 Hill, 338; *Johnson* v. *Burrel*, 2 id., 238; *Jarvis* v. *Jarvis*, 3 Edw., 462; *Benson* v. *Mayor, etc.*, 10 Barb., 223; *Calkins* v. *Calkins*, 3 id., 305; *Sandford* v. *Bennett*, 24 N. Y., 20; *Petts* v.

*Super's of Ulster Co.*, 63 Barb., 83; *People ex rel. Ryan* v. *Green*, 58 N. Y., 295; *Fitzpatrick* v. *Boylen*, 57 id., 433; *People* v. *Super's of Ulster Co.*, 43 id., 130; *Westervelt* v. *Greggs*, 12 id., 202.)

ANDREWS, J. Barbara Eimer, by her intermarriage with Gottfried Baur in 1857, who was a citizen, became herself a citizen, by virtue of such marriage, and capable of taking and holding lands in this State by purchase or descent: (U. S. Statutes at Large, vol. 10, ch. 71, p. 604; 1 R. S., 719, § 8; *Burton* v. *Burton* 1 Keyes, 359; *Kelly* v. *Owen*, 7 Wall., 496.) Upon the death of her brother, Jacob Schlegel, intestate, in 1866, the premises in question would have descended under our statute to Ludwig Schlegel, the father of Jacob, except for the fact of the alienage of Ludwig, which impeded the descent to him, provided his incapacity was not taken away by section 4 of chapter 115 of the Laws of 1845. The incapacity of Ludwig, the father, to take as the heir of Jacob was not removed by that statute, for the reason that the fourth section only removes the disability of alien heirs in respect of lands of *alien residents*, and not in respect of land of citizens; and as Jacob, the son, was a citizen at the time of his purchase of the premises in question and when he died, the statute of 1845 does not apply. The fourth section declares that if any " alien resident," who has taken or shall take a conveyance of lands, has died or shall die, leaving persons, who, according to the statutes of this State, answer the description of heirs, such persons, whether citizens or aliens, shall be capable of taking and holding as heirs of the " deceased alien," etc. The language does not admit of the construction that the words " alien resident " include or designate a naturalized citizen. A reference to the twelfth and other sections of the act renders this plain, if any doubt could exist, upon the words of the fourth section alone.

It is justly said that the effect of this construction of the act of 1845 is to discriminate between resident aliens and

citizens, either native born or naturalized, to the disadvant-age of the latter, by rendering the alien heirs of the former capable of inheriting, while the alien heirs of citizens con-tinue under the disability and incapacity of the common law.  But this incongruity cannot change the plain meaning and interpretation of the act, and it has been remedied by the amendment made by chap. 261 of the Laws of 1874.

In *Heney* v. *The Trustees, etc., of the Brooklyn Benev. Soc.* (39 N. Y., 333), the question was whether the plaintiffs, who answered the description of heirs at law of Cornelius Heney, a naturalized citizen, who died in 1848 seized of the premises in controversy, were entitled to inherit, being aliens at the time of the descent cast, although subsequently natur-alized.  It was decided adversely to the plaintiffs.  If the construction of the act of 1845 now claimed by the appel-lant is correct, the plaintiffs in that case were entitled to recover.  But this point was not taken by the able counsel who argued that case, and it cannot be assumed that it was overlooked both by counsel and by the court.

We are therefore of the opinion that the premises in ques-tion did not descend to Ludwig Schlegel the father, and for the same reasons, that the children of Catharine Gompper, a deceased sister of Jacob Schlegel the intestate, who was an alien, could not inherit from their uncle or through their deceased mother.  They were aliens, and are not within the provisions of the statute of 1830, which saves the rights of a person capable of inheriting from being barred of the inherit-ance by reason of the alienism of any ancestor of such person. (1 R. S., 754, § 22.)

Barbara Eimer, the sister of Jacob Schlegel, was as has been seen, by reason of her citizenship, capable of taking by descent, and was the only person at the time of his decease, of his blood not disabled by reason of alienage from taking the premises in question.  If, in order to support her title by descent she is compelled to trace the inheritance through Ludwig Schlegel the common ancestor, who was living at the death of Jacob, this would be an insuperable ob-

jection. But it is a well settled principle of the common law, that the descent between brothers or between a brother and sister is immediate, and the alienage of the father does not impede the descent between children. "The father is medium *differens sanguinis*, but not medium *differens hereditatis*" : ( *Collingwood* v. *Pace*, 1 Vent., 413; *Hobby's Case*, Cro. Jac., 539; *McGregor* v. *Comstock*, 3 N. Y., 408.) This rule was not changed by the statute of 1786, which enabled the father of a decedent to inherit from him in default of lineal heirs. That statute changed the order of descent ; but no father living, or, if living, incapable of taking by reason of alienage, then the brothers and sisters take — not, however, through the father, but immediately from the decedent, as at common law. The brothers and sisters are respectively stocks of descent, and alienism is an impediment only where it comes between the stock of descent and the person claiming to take. And if some of the persons who answer the description of heirs are incapable of taking by reason of alienage, they are disregarded, and the whole title vests in those heirs competent to take, provided they are not compelled to trace the inheritance through an alien : (*Jackson* v. *Green*, 7 Wend., 334; *Orser* v. *Hoag*, 3 Hill, 79; *McLean* v. *Swanton*, 13 N. Y., 535.) That the statute changing the order of descent was not intended to change the rule, that the descent between brothers is immediate, is confirmed by reference to the seventh section of our present statute (1 R. S., 752), which provides that "if there be no father or mother *capable of inheriting* the estate, it shall descend, in the cases hereinafter specified, to the collateral relatives of the intestate." The next section then provides for the descent between brothers and sisters, and is a case specified, in the contingency of there being no father or mother *capable of inheriting* : (§ 8.) We are satisfied that the change in the order of descent was not intended to incapacitate brothers and sisters from inheriting immediately from each other, where the father and mother are dead, or are incompetent from alienage to take the

inheritance. It follows that the title to the premises in question vested in Barbara Eimer upon the death of Jacob Schlegel.

The act of 1874 (chap. 261) could not operate to divest her estate thus acquired. Prior to the passage of that act she had recovered possession of the premises, by judicial proceedings against the person in possession, founding her claim upon her title by descent. That act may perhaps operate as a surrender by the State of its title to lands, acquired by escheat before the passage of the act, in favor of persons who, except for alienage, would have taken them by descent; but it would be contrary to fundamental principle, to hold that the title, which, under the laws of descent existing at the death of Jacob Schlegel, had vested in and became perfect in Barbara Eimer, could be taken away by subsequent legislation removing the disabilities of alienage: (*The People* v. *Conklin*, 2 Hill, 67; *Heney* v. *The Trustees of Brooklyn Benev. Soc.*, 39 N. Y., 333; *Westervelt* v. *Gregg*, 12 id., 202; *Dash* v. *Van Kleeck*, 7 J. R., 477; *Wood* v. *Oakley*, 11 Paige, 400.)

The other questions in the case do not require special notice.

We think the judgment is right, and that it should be affirmed.

All concur.

Judgment affirmed.