In the Matter of the Estate of J. MELVIN SAMSON, Deceased.

Surrogate's Court, Cortland County, January 28, 1931.

*Lusk, Buck, Ames & Coon,* for the petitioner.

*Jenkins, Deyo & Hitchcock,* for the respondents.

CHAMPLIN, S. J. Melvin Samson, the testator, died April 1, 1929. His will was admitted to probate, as construed by this court, August 20, 1929. The testator attempted to set up a trust which was declared invalid and void and of no effect. All of the provisions of the will pertaining to the trust were excised. For the purposes of this proceeding, the estate is to be distributed as though the decedent died intestate, except as to certain legacies.

Clara H. Van Gorden and Emma C. Knight were appointed executrices of said will. The latter has since died, leaving Clara H. Van Gorden the sole surviving executrix. On September 22, 1929, letters testamentary upon the estate of Emma C. Knight were issued to Clara H. Van Gorden. The petition herein is made by Clara H. Van Gorden, individually, as surviving executrix of the Samson estate and as executrix of the Knight estate.

The question to be determined is, what share does each of the next of kin of the testator take in the residue and remainder of his estate? The answer is to be determined by the proper application of the provisions of the Statutes of Distribution in effect at the time of the death of the testator.

The testator at his death left no widow, descendants, brothers or

sisters. His next of kin are the descendants of a deceased brother and of a deceased sister whose relationship to the testator is as follows:

I. Children of Mary Samson Holmes, a deceased sister, to wit:

1. Emma Knight, niece (who has since died).

2. Clara H. Van Gorden, niece.

II. Descendants of Isaac S. Samson, a deceased brother of testator, to wit:

1. Children of Irene Samson Poole, a deceased daughter of Isaac S. Samson, to wit:

a. James Martin Poole, grandnephew.

b. Emogene Poole Phipps, grandniece.

2. Children of May Samson Delavan, a deceased daughter of Isaac S. Samson, to wit:

a. Laura Delavan Spanle, grandniece.

b. Edna Delavan Smith, grandniece.

c. John Samson Delavan, grandnephew.

d. Gertrude Delavan Smith, grandniece.

e. Mary Delavan Harrington, grandniece.

3. Child of Gertrude Samson Smith, a deceased daughter of Isaac S. Samson, to wit:

a. Frederick Samson Smith, grandnephew.

The contention of the petitioner is that the estate should be divided into two parts, one-half to be given to the descendants of Mary Samson Holmes and the other half to be given to the descendants of Isaac S. Samson. The contention of the respondents is that the estate should be divided into five equal parts, one part to be given to each of the surviving nieces and one part to be given to the children collectively of each of the three deceased nieces.

This estate should be distributed pursuant to the provisions of subdivision 5 of section 98 of the Decedent Estate Law* in effect on April 1, 1929, the time of testator's death.

The first provision of subdivision 5 is as follows: " If ·there be no widow, and no children, and no representatives of a child, the whole surplus shall be distributed to the next of kin, in equal degree to the deceased, and their legal representatives." This is a general classification which applies to the facts in this case, there being no widow and no children and no representatives of a child. It simply provides generally for distribution to the next of kin, as more particularly set forth in the succeeding provisions of the subdivision.

* Since amd. and renum. § 83, subd. 6, by Laws of 1929, chap. 229.

The second provision is as follows: " and if all the brothers and sisters of the intestate be living, the whole surplus shall be distributed to them." If the testator's brother and sister had survived him, each would have taken a one-half of the residue in his or her own right. The descent to them from their brother, the testator, would have been immediate. The brother and sister of the testator having predeceased him and leaving descendants, they became respectively stocks of descent. (*Luhrs* v. *Eimer*, 80 N. Y. 171, 178, 179.)

The third provision is as follows: " if any of them be living and any be dead, to the brothers and sisters living, and the descendants in whatever degree of those dead; so that to each living brother or sister shall be distributed such share as would have been distributed to him or her if all the brothers and sisters of the intestate who shall have died leaving issue had been living, and so that there shall be distributed to such descendants in whatever degree, collectively, the share which their parent would have received if living." The obvious meaning of this provision is, if there are brothers and sisters living and descendants of brothers and sisters, the distribution is made *per stirpes* between the living brothers and sisters and the descendants of the deceased brothers and sisters, the living brothers and sisters each taking in their own right and the descendants of the deceased brothers and sisters taking by representation.

The fourth and last provision of the subdivision is as follows: " and the same rule shall prevail as to all direct lineal descendants of every brother and sister of the intestate whenever such descendants are of unequal degrees." This provision applies to the situation in this case. Here there are descendants of unequal degrees who are the lineal descendants of a brother and a sister of the decedent. It states that the " same rule shall prevail." This clearly means that the division among the descendants of the deceased brother and sister shall be by *per stirpes*. It is the same rule which is applied to the previous provisions of subdivision 5. The share which a brother and sister each would have received, if living, was one-half and the lineal descendants of each would take the one-half share of their ancestor. Mary Samson Holmes would have received, if living, a one-half of the estate. Therefore, her two daughters would be entitled to her one-half. Isaac S. Samson would have received, if living, a one-half of the estate and his lineal descendants would be entitled to his one-half.

The provisions of subdivision 11 of section 98 of the Decedent Estate Law* support this construction. They are as follows:

* Since amd. and renum. § 83, subd. 9, by Laws of 1929, chap. 229.

" 11. When such descendants or next of kin are of unequal degrees of kindred, the surplus shall be apportioned among those entitled thereto, according to their respective stocks; so that those who take in their own right shall receive equal shares, and those who take by representation shall receive the share to which the parent whom they represent, if living, would have been entitled." This subdivision would apply the same rule to the present case which is one where " next of kin are of unequal degrees of kindred " and provides that apportionment should be " according to their respective stocks." As above stated, the descent between brothers is immediate.

The definition of the word " stock " in Black's Law Dictionary is: " In the law of descent. The term is used, metaphorically, to denote the original progenitor of a family, or the ancestor from whom the persons in question are all descended; such descendants being called ' branches.' "

The expression " respective stocks," which is in the plural, means the progenitors of the different branches, to wit, the brothers and sisters, and the representatives of a brother or sister are entitled to have divided among them the share which a brother or sister would have received if living. The brothers and sisters are clearly " respective stocks " of descent. (*McGregor* v. *Comstock*, 3 N. Y. 408; *Luhrs* v. *Eimer*, 80 id. 171.)

Where the Court of Appeals has defined a termand the Legislature thereafter uses that term, the conclusion is that the Legislature used it according to the definition placed thereon by the court. (*O' Tier* v. *Sell*, 252 N. Y. 400.)

The respective stocks in this matter are two, those of Mary Samson Holmes and of Isaac S. Samson. A division according to respective stocks will give the children of Mary Samson Holmes one-half of the surplus and the descendants of Isaac S. Samson the other half. If the brother and sister had been living, they would have taken in their own right. As all of the parties here are their descendants, they must take by representation.

The above construction of subdivision 5 of section 98 of the Decedent Estate Law is the same as that given by the Commission to Investigate Defects in the Laws of Estates. In a note recommending a proposed amendment to clarify subdivision 6 of section 83 of the Decedent Estate Law, as enacted by the Laws of 1929, the Commission makes the following statement: " The Commission therefore intends to continue what they regard has been the existing rule that where a decedent leaves no surviving brothers or sisters, but children of deceased brothers or sisters and grandchildren or other descendants of deceased brothers or sisters, that descent and

distribution shall be *per stirpes* according to the root or stock of the deceased brother or sister." (Report of the Commission to Investigate Defects in the Laws of Estates, Legislative Document [1930] No. 69, at pp. 107 and 108.) This statement applies to the instant case and asserts that distribution shall be *per stirpes* according to the root or stock of the deceased brother or sister. This opinion should be given considerable weight, because it comes from a Commission of able judges and lawyers, who have made a special study of the subject. Also because it is a part of the formal notes submitted in connection with proposed legislation which was adopted. (*Woollcott* v. *Shubert*, 217 N. Y. 212.)

It is urged by the respondents that because the two nieces surviving the decedent are his nearest living next of kin the basis of distribution should be the nieces and their descendants. It is proposed to divide the residue of the estate into five equal parts and give one part to each of the nieces and one part to the children collectively of each of the deceased nieces. Subdivision 10 of section 98 of the Decedent Estate Law* is referred to as authority for this method of distribution. It reads as follows: " 10. Where the descendants, or next of kin of the deceased, entitled to share in his estate, are all in equal degree to the deceased, their shares shall be equal."

Respondents' brief contains this statement: " Since two of testator's nieces were living and three had died leaving children, it seems equally obvious that the two living nieces, Emma Knight and Clara Van Gorden, each takes in her right one-fifth of the residue, and that the child or children of each of the three deceased sisters take collectively and by representation ' the share to which the parent whom they represent, if living, would have been entitled,' under the principles of subd. 11 above."

It is error to assume that the two living nieces take in their own right. They take by representation. A hypothetical creation of a group based on the nearest surviving next of kin is made in order to invoke a *per capita* distribution. This is contrary to the fact and the rule of *per stirpes* which should govern this situation.

Several decisions are cited to sustain this contention. In *Matter of De Voe* (107 App. Div. 245; affd., without opinion, 185 N. Y. 536) the question involved in this proceeding was not decided. That opinion dealt only with the question of whether the statute permitted grandchildren to take.

The question came up in *Langrick* v. *Howe* (212 App. Div. 404). There the main issue was in reference to the presumption of death of a man who had disappeared. The judge writing the opinion

---

* Since amd. and renum. § 83, subd. 8, by Laws of 1929, chap. 229.

simply stated that, if he was dead, division would be made among the nephews and nieces and other descendants, each nephew and niece and the descendants of each nephew and niece taking the same amount, but there was no analysis or discussion of subdivisions 5 and 11 of section 98 of the Decedent Estate Law.

In *Matter of Prote* (54 Misc. 495) the surrogate in his opinion says: " The underlying principle, which, it seems to me, is the proper basis for the decision of all of such cases, is that you must first find the nearest class of relationship to the intestate and that each one in the nearest class take an equal share of said estate; and the representatives of any in that class who have died take the share to which the parent would have been entitled. * * * It seems to me that there can be no doubt that this is the underlying principle of this law; and it certainly grants exact justice to all concerned, if each one of the nearest class to the intestate receive an equal share and the representatives of any who have died receive the same share as their parent would have received if living."

This case was affirmed by the Appellate Division, Second Department (133 App. Div. 928), without opinion, but on the opinion of the surrogate and on the authority of *Matter of De Voe*, above discussed, which is not in point. It seems that the court did not appreciate that the " underlying principle " applicable to the situation in the *Prote* case was the rule of *per stirpes*. The respondents are seeking to apply the " underlying prin iple " of the *Prote* case to the present case. This is a v o ation of the principle of *per stirpes* and s contrary to the expressed direction of subdivisons 5 and 11 of section 98 of the Decedent Estate Law.

The statement of the court that " it certainly grants exact justice to all concerned " is hardly warranted by the result in that case, for it took away a one-fourth share from the " stock " of one deceased sister of the decedent and gave it to the " stock " of another sister, so that one " stock " received one-fourth and the other " stock " received three-fourths of the estate of the decedent. It does not seem possible that this is the kind of justice contemplated by subdivision 5 of section 98 of the Decedent Estate Law. None of the nephews took in their own right, but they took by representation and were only entitled to take their mother's share.

The surrogate in *Matter of Rowe* (103 Misc. 111) based his decision on *Matter of Ebbetts* (43 id. 575), which is not in point. Upon the affirmance in the Appellate Division of *Matter of Rowe* (197 App. Div. 449) there was no discussion or analysis of the method of distribution.

There does not seem to be any sound principle or theory to support

the authorities cited by the respondents. For some unknown reason an exception is undertaken to be made to the general rule of *per stirpes* expressly laid down by said subdivisions 5 and 11. In order to arrive at the conclusions stated in these cases it is necessary to create a hypothetical class of respective stocks. Only in this manner can such a distribution be made. It violates the expressed direction of the statute which states that this principle " shall prevail as to all direct lineal descendants of every brother and sister of the intestate whenever such descendants are of unequal degrees."

From the cases cited it does not appear that the present question has been passed upon by the Court of Appeals or that it has been discussed and analyzed in any opinion of the Appellate Division. It is impossible for me to agree with the reasoning of the cases relied upon by the respondents. It is my opinion that the principle of *per stirpes* as above construed applies to the situation in the present matter.

The distribution in this estate should be as follows: To Clara H. Van Gorden a one-fourth share; to the estate of Emma C. Knight a one-fourth share; to James Martin Poole a one-twelfth share; to Emogene Poole Phipps a one-twelfth share; to Laura Delavan Spanle a one-thirtieth share; to Edna Delavan Smith a one-thirtieth share; to John Samson Delavan a one-thirtieth share; to Gertrude Delavan Smith a one-thirtieth share; to Mary Delavan Harrington a one-thirtieth share; to Frederick Samson Smith a one-sixth share.

A decree may be entered providing for the distribution of the estate as herein set forth.