required. It shall be the duty of the physician to whom such subpœna is so issued, to make the inspection and autopsy required and to give evidence in relation thereto at the coroner's inquest. The testimony of such physician and that of any other witnesses that the coroner shall find necessary shall constitute an inquest."

It would seem that there was no ground even for doubting that the decedent's death was due to the fall from the seat of the coach upon the pavement, and that viewing the remains without an autopsy should have sufficed. Assuming, however, that the coroner, if acting in good faith, would have had a right under the provisions of this section of the consolidation act to hold an inquest to determine the cause of death as provided in the statute, still there is no evidence here that the coroner subpœnaed the defendant for the purpose of viewing the body of the decedent, or of making the autopsy, and there is no evidence of any direction by or authority from the coroner to dissect the body to any extent whatever. Doubtless, if the defendant made the autopsy by the direction of the coroner, that would justify the dissection of the body (Statutes, supra; People v. Fitzgerald, 105 N. Y. 146, 152, 11 N. E. 378, 59 Am. Rep. 483; Crisfield v. Perine, 15 Hun, 202, affirmed 81 N. Y. 622), but it would not, in the absence of further directions from the coroner or district attorney, or other evidence, warrant the removal or detention of any part of the body.

It is contended that, since it was unlawful and would constitute a misdemeanor for the defendant to dissect the body without authority from the coroner, such authority must be presumed. It appears, however, that the defendant did not claim to the plaintiff's daughter, or to Coroner Harburger, that he was authorized to dissect the body by any coroner, and therefore there can be no presumption that he was so authorized, even if such presumption would otherwise prevail, as to which we deem it unnecessary to express an opinion.

It follows, therefore, that the judgment should be reversed, and a new trial granted, with costs to appellant to abide the event.

CLARKE, MILLER, and DOWLING, JJ., concur. INGRAHAM, P. J., concurs in result.

---

(143 App. Div. 286.)

### In re WAGENER.

(Supreme Court, Appellate Division, First Department. March 10, 1911.)

1. DEATH (§ 2*)—PRESUMPTIONS—ABSENCE.
　　The rule that an absentee, who has not been heard of for 7 years, may be presumed to be dead at the expiration of the 7 years for the purpose of distributing an estate, is subject to limitations, and circumstances may justify a finding of death before, or they may be such as to give rise to no presumption of death, either at or after the expiration of the 7 years.
　　[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 1–3; Dec. Dig. § 2;* Descent and Distribution, Cent. Dig. § 10.]

2. DEATH (§ 2*)—PRESUMPTIONS—ABSENCE.
　　Where the failure of an absentee to communicate with his friends is satisfactorily accounted for on some other hypothesis than that of death,

---

or when no inquiry has been directed to the place where he was last known to be, the presumption of death, resulting from his absence, unheard of, for 7 years, does not arise.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 1–3; Dec. Dig. § 2;* Descent and Distribution, Cent. Dig. § 10.]

3. DEATH (§ 4*)—EVIDENCE—ABSENCE.

Evidence *held* to justify a finding that an absentee, unheard of for 18 years, was dead, for purposes of distributing an estate of his deceased wife, who, with a child of the marriage, perished in a common disaster.

[Ed. Note.—For other cases, see Death, Dec. Dig. § 4.*]

McLaughlin, J., dissenting.

Appeal from Surrogate's Court, New York County.

Proceedings for the judicial settlement of the account of August B. Wagener, one of the administrators of Emilie Bozenhard, deceased. From a decree of the Surrogate's Court, directing the administrator to deposit funds in his hands with the chamberlain of the city of New York to await the further order of the court, the party aggrieved appeals. Reversed, and proceedings remitted to the Surrogate's Court.

Argued before CLARKE, McLAUGHLIN, SCOTT, MILLER, and DOWLING, JJ.

Sutro & Wright (Theodore Sutro, of counsel), for appellant.
August P. Wagener, for respondent.

MILLER, J. On the 20th of September, 1892, Emilie Kaaz, the appellant's sister, and one Charles Jules Bozenhard intermarried. They lived together until January 25, 1893, when the husband disappeared. He has not been heard of since. On the 6th of June, 1893, a child of the marriage was born. Mother and child lived with and were supported by the appellant until June 15, 1904, when both perished in the Slocum disaster. The said Emilie Bozenhard left a small estate, of about $2,000, presumably the accumulation of savings from her brother's earnings intrusted to her for safe-keeping. The question on this appeal is whether the fund is to be deposited with the city chamberlain to remain indefinitely. The referee found that there was a presumption of death of the absentee at the expiration of 7 years after his departure; but the learned surrogate sustained the exceptions to the report, on the ground that the circumstances of the departure were such as to make it unlikely that the absentee would communicate with his friends.

The general rule that an absentee, who has not been heard of for 7 years, may be presumed to be dead at the expiration of the 7 years, for the purpose of distributing an estate, is well settled. See Jackson ex rel. Van Buskirk v. Claw, 18 Johns. 347; Eagle v. Emmet, 4 Bradf. Sur. 117; Matter of Sullivan, 51 Hun, 378, 4 N. Y. Supp. 59; Barson v. Mulligan, 191 N. Y. 306–324, 84 N. E. 75, 16 L. R. A. (N. S.) 151. Of course, the rule is to be applied with caution (Matter of Board of Education, 173 N. Y. 321–326, 66 N. E. 11), and it has limitations. The rule and its limitations are stated, with supporting authorities, in Lawson's Presumptive Evidence, p. 251 et seq. Circumstances may justify a finding of death before, or they may be such

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

as to give rise to no presumption either at or after, the expiration of 7 years. Each case must necessarily depend upon its own facts. When the failure of the absentee to communicate with his friends is satisfactorily accounted for on some other hypothesis than that of death, or when no inquiry has been directed to the place where he was last known to be, as in Dunn v. Travis, 56 App. Div. 317, 67 N. Y. Supp. 743, no presumption arises. But it is to be borne in mind that the rule was adopted by analogy to the statutes with reference to bigamy and to leases for life, as a rule of necessity, to fix the rights of the living with relation to the absent, and that it is necessarily an artificial rule, depending for its application upon the known facts, regardless of what the actual fact may be. Rights are not to be held in abeyance indefinitely on account of the absence of a person of whom no trace can be found. He may not be dead, but he will be presumed to be dead for the purpose of fixing the rights of those known to be living. In Davie v. Briggs, 97 U. S. 628, 24 L. Ed. 1086, Mr. Justice Harlan quotes the following rule from Stephens' Law of Evidence, c. 14, art. 99:

" * * * A person shown not to have been heard of for 7 years by those (if any) who, if he had been alive, would naturally have heard of him, is presumed to be dead, unless the circumstances of the case are such as to account for his not having been heard of without asuming his death."

Let us apply that rule to the facts of this case. The absentee was a native of Germany. He had been in this country about 6 years before his marriage to the deceased, and during that time had lived on and off with an aunt, his only known relative in this country. While he appears to have been a man of unstable disposition and of irregular habits, as he was accustomed to absent himself for irregular periods without disclosing his whereabouts, he always returned to the home of his aunt. He was married at her home, she paying the expense of the wedding, and he and his wife lived with her for about 2 months thereafter. So far as the evidence discloses, he and his wife had lived happily together up to the time of his disappearance, which was at once reported to the police. Search was made as thoroughly as the case permitted, and wherever it was thought there was any likelihood of finding any clue as to his whereabouts. Later inquiry was directed to the place in Germany where he was born, and whence he had come to this country; but no trace of him was ever found. We may lay out of the case altogether the fact that, within a short time before her death, the wife, and even the aunt, mistook for the absentee a man named Muenchausen, as the referee found and the evidence shows that that was clearly a case of mistaken identity. The case is then plainly within the rule, unless the circumstances are such as to account for the failure of both the aunt and the wife to hear from him.

Undoubtedly the disappearance was intentional, but the motive of it and the length of the contemplated absence are conjectural. It was said that he was displeased at the prospect of becoming a father, but it is inconceivable that a man would desert his wife under such circumstances and solely on that account. If he did intend to abandon her, his failure to communicate with her is accounted for; but that

does not account for his failure to communicate with his aunt, his only relative in this country, who had always treated him as a son. But I prefer to take the most charitable view possible of his conduct, the one suggested by his former habit and mode of life. He was at least capable of leaving his wife temporarily without explaining his absence, as he had formerly been in the habit of leaving his aunt. Marriage had not broken him of his propensity for unexplained absences from home. But his habit had been to return, and the fact that he was evidently one of the shiftless, worthless sort, adds to the probability that he would return, at least to the home of his aunt, even if he intended to abandon his wife. Moreover, if he kept his whereabouts concealed for fear of prosecution for abandonment, that motive disappeared in 1904. The names of the victims of the Slocum disaster were widely published, and it is certainly not too much to infer, in a case like this, that, if living, the absentee would have read of that catastrophe.

It is said that he had another motive for concealment, namely, the fear of arrest for larceny, because of the fact that he had taken a canvasser's outfit belonging to a seed firm, by which he was employed, and $100 belonging to his brother-in-law, this appellant. But that money had been given to him by the latter to deposit in the bank in his own name, and it is improbable that he feared a prosecution, either on account of that, or of a trivial thing like a canvasser's outfit.

If the case were susceptible of further proof, it would be wise to require it before distributing the fund. But, with all the available proof before us, we have the case of an unexplained disappearance, followed by a lapse of 18 years without any trace of the absentee, after inquiry in every quarter where there was any likelihood of finding a clue to his whereabouts. And if the foregoing views are not altogether fanciful, it is at least a question of fact whether the circumstances disclosed satisfactorily account for his failure to. communicate with his wife or his aunt, except upon the hypothesis of death. Of course, it is quite possible to take a different view of the case. But when it comes to balancing probabilities, in a case like this, I do not think we are bound to lay the result entirely out of sight. My conclusion is that the evidence justified the finding of the referee, and that the learned surrogate erred in sustaining the exceptions to the report.

The decree should be reversed, and the proceeding remitted to the Surrogate's Court for the entry of a proper decree. Under the circumstances, no costs are allowed to either of the parties to this appeal.

CLARKE, SCOTT, and DOWLING, JJ., concur. McLAUGHLIN, J., dissents.