### CERF v. DIENER.

(Supreme Court, Appellate Division, First Department. December 29, 1911.)

VENDOR AND PURCHASER (§ 130*)—MARKETABLE TITLE.

     The title to real estate which plaintiff agreed to sell is not unmarketable because of the possibility of an outstanding title by the curtesy to one-fifth of the land, held by a man who left this state 25 years ago for Colorado to engage in the mining business, leaving his family in this state, and who has not been heard from for 23 years; he being at this time 72 years of age, if alive.

     [Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 245, 246; Dec. Dig. § 130.*]

Action by Gustave Cerf against Louise B. Diener. Submission of controversy upon agreed facts, and judgment for plaintiff.

Argued before INGRAHAM, P. J., and LAUGHLIN, MILLER, SCOTT, and DOWLING, JJ.

Benjamin Reass, for plaintiff.
Harold Swain, for defendant.

SCOTT, J. This controversy comes before us upon an agreed case submitted under the provisions of the Code of Civil Procedure (sections 1279–1281), and involves the question as to the marketability of

the title to a lot of land in the city of New York. By a written contract plaintiff agreed to sell and defendant agreed to buy the lot of land in question, but the defendant has refused to complete the purchase, on the ground that the title to the property is unmarketable by reason of the possible outstanding title by curtesy of one Matthew Tighe. The facts upon which this objection to the title rests are thus stated in the submission:

"In May, 1895, Catherine Tighe became seised by inheritance of one-fifth of the premises, upon the death of a brother. She has since died, and plaintiff has acquired all her interest, as well as the interest of the other owners. Said Matthew and Catherine Tighe were married in 1857 in Brooklyn, N. Y. About 25 years ago, Tighe left his wife and children, who were all residing then at St. Louis, Mo. At the time he left the family he was 47 years of age. He was then on the best of terms with his wife and children, and was in good health. He then told his wife that he was going West, to Colorado or Arizona, to go into the mining business. During the first two years of his absence—that is, about 23 years ago—letters and remittances of money were received by Mrs. Catherine Tighe. The best recollection of a daughter of said Matthew Tighe and Catherine Tighe, which daughter had no correspondence with her father during his absence, is that said letters and remittances came from Colorado. Said daughter was 15 years of age at the time her father left home for the last time. Thereafter all remittances, as well as any and all communications, suddenly stopped, without explanation. No communication has been had at any time with any person who was acquainted with or who saw said Matthew Tighe after he left his family. Eighteen years ago Matthew Tighe's eldest married daughter and son-in-law went to Denver, Colo., in an effort to locate the father. They advertised in the newspapers, and sought for traces of him, but were entirely unsuccessful. The further facts are that Tighe had lived with the family for about a year or so preceding his last departure. His prior absence had been occasioned by his mining interests, also out West. He had been mining and speculating in the West for about a year or so before he left his home the last time. Prior to the commencement of his mining operations he was making a fairly good living, and took care of and was devoted to his family. His first and only other absence from the family lasted for a couple of years. Members of Tighe's family have no absolute knowledge of whether he is dead or alive. Two daughters still reside at St. Louis, Mo. A son has resided in Chicago, Ill., since 1890. Catherine Tighe and another daughter continued to reside in St. Louis, Mo., after the departure of Matthew Tighe, until their subsequent deaths. In 1909 the plaintiff made various inquiries of the chief of police and postmaster of Denver, Colo., and of the board of health, postmaster, and chief of police at St. Louis, Mo., as to the address, existence, or death of Matthew Tighe, but was unable to locate him, or obtain any evidence of his present existence or death."

We have so recently had occasion to consider at some length the rules as to the presumption of death arising from long-continued and unexplained absence (Matter of Wagener, 143 App. Div. 286, 128 N. Y. Supp. 164) that it is unnecessary to indulge in a rediscussion of the general subject. There is no hard and fast rule which can be applied to every case, for each must stand in a measure upon its own facts. The rule is not absolute that any disputable fact, supposed to cloud a title, will serve in every case to bar the enforcement of a contract to purchase real estate. If the existence of the alleged fact is a possibility only, or the alleged outstanding right is a very improbable and remote contingency, the court may, in its discretion, compel a purchaser to accept the title. Ferry v. Sampson, 112 N. Y. 415, 20 N. E. 387.

In the present case we cannot but deem the contingency that Matthew Tighe remains alive as a most remote and improbable one. He has been absent for about 25 years, and if he were living now would be upwards of 72 years old. His relations with his family were such that there is no apparent reason why he should have voluntarily refrained from communicating with them during all these years, especially as he did so communicate during the first few years of his absence. Furthermore, the business upon which he went West was, 25 years ago, not wholly free from personal peril. On the whole, we think that the defendant's objections to the title are untenable, and that she should comply with her contract. We arrive at this conclusion with less hesitancy than we might feel if the title to the property depended upon the life or death of Matthew Tighe. At the most there is nothing more involved than a possible incumbrance upon the title to a fraction of the property, and that incumbrance, if now existent, cannot, in the nature of things, remain in existence for many years.

Our conclusion is that there must be judgment for the plaintiff as prayed for in the submission, with costs.

INGRAHAM, P. J., and MILLER and DOWLING, JJ., concur. LAUGHLIN, J., dissents.