Matter of the Transfer Tax upon the Estate of WILLIAM ROWE, Deceased.

(Surrogate's Court, Bronx County, March, 1918.)

Transfer tax — distributable share when taxable under — evidence — presumption of death — decedents' estates — executors and administrators — intestacy — appeal.

Upon an appeal taken from an order assessing a transfer tax it appeared that decedent died intestate in 1915; that a nephew, and a brother who had children, had disappeared and in order to properly fix the amount and rate of the tax to be assessed it was necessary to determine whether the nephew and the brother both were dead and when they died. It further appeared that after the death of the decedent herein letters of administration were granted upon the estate of his brother and by the decree entered it was adjudged and decreed that the brother was presumed to be dead at the date thereof. *Held,* that in the present proceeding the adjudication of the death of decedent's brother was not conclusive upon the question of the date of such death.

That, for the purposes of the distribution of his estate, an absentee, who had not been heard from for seven years, may be presumed to be dead at the expiration of seven years from the date of disappearance; that the presumption that decedent's brother was dead after seven years from December 31, 1894, and died intestate before the decedent is warranted by the evidence.

There not being sufficient evidence to raise the presumption as to the fact of the death of decedent's nephew, his distributive share is taxable.

Surrogate's Court, Bronx County, March, 1918.   [Vol. 103.

APPEAL from order assessing and fixing the transfer tax.

George W. Ellis, for appellants Rowe et al.

Sidney Rossman, for appellants Lynch et al.

John Davis, special guardian for infant appellants.

Eldred E. Jacobsen, for State Comptroller.

SCHULZ, S.   The decedent died a resident of Bronx county on the 22d day of July, 1915, intestate, and his widow, Mary Rowe, was appointed the administratrix of his goods, chattels, etc.

It is conceded by all parties that he left him surviving (a) his widow, Mary Rowe; (b) his nephews, Richard Rowe, William S. Rowe and Thomas F. Rowe, and his niece, Mary L. Lott, children of Thomas Rowe, sometimes also known as Thomas F. Rowe, a brother of the decedent; (c) his nieces, Bridget Langrick, Catherine E. Ross, Margaret M. Lynch, and his nephew, Joseph Lynch, who are the children of Mary Lynch, a sister of the decedent, who died prior to his death, and (d) his grandnieces, Mary Jane Lynch and Catherine M. Lynch, and his grandnephews, William O. Lynch, Thomas P. Lynch and Joseph L. Lynch, the children of Thomas Lynch, a nephew of the decedent, who predeceased him, and who was a son of his deceased sister, Mary Lynch, whose other children are set forth under subdivision " c."

Thomas Rowe, also known as Thomas F. Rowe, the father of the persons enumerated under subdivision " b," and Michael Lynch, a nephew of the decedent and one of the children of Mary Lynch, whose other children are enumerated under subdivision " c," have disappeared, and it is not known as a fact whether

Misc.]     Surrogate's Court, Bronx County, March, 1918.

they are alive or dead.  After the death of the decedent letters of administration were granted upon the goods, etc., of Thomas Rowe to the Lawyers Title and Trust Company.  Since the beginning of this transfer tax proceeding, and on October 25, 1916, Mary Rowe, the wife of the decedent, died, and letters of administration upon her estate were issued to her brother, Conrad Hilbert.  Thereafter this administrator Hilbert filed and prayed for the judicial settlement of his account as such administrator for the acts and doings of his intestate as administratrix of the decedent.  In that proceeding a special guardian had been appointed for the grandnieces and grandnephews of the decedent set forth in subdivision '' d,'' who are infants, and a special guardian has also been appointed for the parties whose whereabouts are unknown, among whom is Michael Lynch, above referred to, and his widow and issue, if any, if he is dead.

Four appeals have been taken from the order assessing the tax entered upon the report of the appraiser herein upon various grounds, which may be briefly stated as follows:

(1) The Lawyers Title and Trust Company and the children of Thomas Rowe (see subd. '' b,'' *supra*) claim that error was committed by the appraiser, because he assessed the tax upon the theory that Thomas Rowe predeceased his brother, and at the highest rate.

(2) The nephews, nieces, grandnephews and grandnieces set forth in subdivisions '' c '' and '' d '' who are adults contend that the appraiser has erroneously stated the cash value of their respective interests and omitted to state the cash value of the interest of Michael Lynch, if living, and of his heirs at law and next of kin, if dead.

8

**114**            MATTER OF ROWE.

(3) One of the special guardians makes the same objections on behalf of the heirs at law and next of kin set forth in subdivision " d," who are infants and for whom he was appointed in the accounting proceeding.

(4) The state comptroller alleges error on the part of the appraiser in fixing the value of the interests of the grandnephews and grandnieces set forth in subdivision " d " and in fixing the amount of the tax assessed thereon.

A determination of the appeal designated "(1)" will, to a large extent, dispose of the remaining appeals. Concretely stated, it requires a solution of the questions, Is Thomas Rowe, sometimes known as Thomas F. Rowe, the father of the nephews and nieces named in subdivision " b," dead? and, if so, Did he die before or after his brother, William Rowe, the decedent? If he survived the decedent, he was entitled to receive his statutory share of the real and personal property, and his children would not take directly from the decedent (Decedent Estate Law, § 87, being Laws of 1909, chap. 18, and constituting Consol. Laws, chap. XIII), and hence would not be parties to this proceeding. In that event, the share of Thomas, after an exemption of $5,000, would be taxable at the rate of one per cent. Laws of 1915, chap. 664. If, on the other hand, he died prior to the decedent, then his children, as nephews and nieces of the decedent, would take directly from the testator (Decedent Estate Law, *supra*), and their respective shares, after an exemption of $1,000, would be taxable at the rate of five per cent. Laws of 1915, chap. 664. Again, on the first hypothesis, the nephews and nieces who are set forth under " b " and " c," the grandnephews and grandnieces set forth under " d," and the nephew Michael Lynch (assuming that he is alive), would be entitled

to share in the part of the estate of the decedent which their respective deceased ancestors would have been entitled to if alive, the grandnephews and grandnieces under " d " taking *per stirpes*. Thus each of the nephews and nieces named in subdivision " b " would receive one-eighth of the residue after the payment of the wife's share and the expenses of administration. Those set forth in subdivision " c " would each receive one-twelfth thereof, and each of the grandnephews and grandnieces whose names are stated in subdivision " d " would be entitled to one-sixtieth of the same. Decedent Estate Law, § 87; *Matter of Ebbets,* 43 Misc. Rep. 575; affd., *sub nom. Matter of De Voe,* 107 App. Div. 245; affd., 185 N. Y. 536. But if Thomas predeceased the testator, all of the surviving nephews and nieces would share *per capita,* the grandnephews and grandnieces taking their parent's share *per stirpes*. In that event the share of each nephew and niece would be one-tenth and that of each grandniece and grandnephew one-fiftieth of the estate, distributable after the deduction of the widow's share.

It will be observed that the questions raised on these appeals involve a determination of the shares of all of the heirs at law and next of kin of the decedent which will also be necessary before a decree may be entered upon the accounting.

The evidence before the appraiser bearing upon the alleged death of Thomas Rowe consisted mainly of a copy of the record of the proceeding heretofore had in the Surrogate's Court of New York county. This was brought upon the petition of the children of Thomas Rowe that letters of administration upon his goods, chattels, etc., be issued to the Lawyers Title and Trust Company. A surrogate of New York county referred the matter to a referee to hear testimony and to report his opinion thereon. The referee duly rendered his

report, dated December 18, 1916, together with his opinion (N. Y. L. J. Feb. 8, 1917) in which latter he stated that letters of administration should issue to the Lawyers Title and Trust Company.    Subsequently the surrogate entered an order dated February 2, 1917, in which he adjudged and decreed that pursuant to such report the said Thomas Rowe or Thomas F. Rowe, " be, and he hereby is, presumed to be dead as of the date hereof, and that he died intestate, and that Letters of Administration on his Estate be issued to the Lawyers Title and Trust Company, of No. 160 Broadway, New York County."

The first query to be answered is whether in all proceedings after the date of the order the adjudication thus made must be treated as conclusive upon the question of the date of the death of Thomas Rowe. To me it appears very clearly that such is not the case. *Williams* v. *Post,* 158 App. Div. 818; *Eckersley* v. *Curran,* id. 440.    The proceeding had for its purpose the issuance of letters of administration upon the estate of Thomas Rowe.    It was *ex parte,* only the children of Thomas, who were the petitioners, being parties thereto.    None of the other persons having an interest in the estate of this decedent had any notice thereof, so far as is disclosed by the record, and they were not entitled to such notice.    The proceeding affected an entirely different estate.    In the absence of a controlling authority to the contrary, and none has been drawn to my attention, I hold that the order above referred to is not conclusive upon me in this proceeding as fixing the date of the death of Thomas Rowe.    It is evident that such was the view of the learned referee and of the learned court in the New York county proceeding, for the former says in his opinion: " Nevertheless, this proceeding, though it may result in the issuance of letters, will not, in my

Misc.]     Surrogate's Court, Bronx County, March, 1918.

judgment, be conclusive in other proceedings affecting property rights, for I judge that letters of administration are conclusive evidence only of the authority of the persons to whom they were granted. They are sufficient to establish the representative character of the individual who assumes to sue by virtue thereof, but they have no greater probative force than letters testamentary or a will proved with the certificate of the surrogate and attested by his seal of office (which) may be read in evidence without further proof; but they are evidence only, and cannot be deemed conclusive on the fact of death in another proceeding, the determination of rights wherein is preconditioned by the fact of death.''

It therefore becomes necessary to examine the proofs before the appraiser to ascertain whether he was warranted in the conclusion which he reached that Thomas Rowe predeceased the decedent.

From the record of the administration proceeding in New York county which is in evidence, it appears that the decedent was born in Ireland about 1844, came to New York in 1851 and married in 1865. That he was an ironworker and that for three years before 1874 he had been in the employ of the United States Navy Yard, Brooklyn, as a first-class mechanic. That in or about 1874 he left his wife and four children and was never again seen or heard of by any of his children and so far as known by his wife, and that none of his children ever heard that he had died or made any search for him until after the death of the decedent. After September 8, 1915, exceptionally thorough, diligent and painstaking efforts were made to find the said Thomas Rowe, but without success.

It appears, however, that he did in some measure remain in touch with the decedent and also with his sister after his disappearance from home. There is a

Surrogate's Court, Bronx County, March, 1918.    [Vol. 103.

fragment of a letter written by the decedent, pre-
sumably to his sister, Mary Lynch, who resided in
Republic, Mich., of which the upper part is missing,
and which so far as material is as follows: '' received
a letter from Brother Thomas.  He was then in the
State of Nevada.   I trust he is well and Happy
* * *.''   The fragment is undated, but was enclosed
in an envelope stamped with the date '' New York,
Dec. 3, 1.30 P M R 94 '' and '' Republic Dec. 5, 1894
Mich.''   It was presumably written in the year 1894,
and this is borne out by the letter apparently sent in
reply thereto by his niece Margaret Lynch, dated
'' Republic, Dec. 7, '94.''   It is contended that the
words '' Many years ago I '' may have preceded the
words '' received a letter,'' the word '' received ''
being at the beginning of the first line of the frag-
ment.   Whether they did or not is of course purely
speculative, but that some writing which referred to
the time of the receipt of the letter by the decedent
from his brother did precede these words is apparent
from those which follow, to wit, '' *he was then* in the
State of Nevada.''   I think it is fair to assume that if
no date had been mentioned or time had been referred
to, and if the writer was speaking as of the time when
he wrote to his sister, he would not have used the words
'' *he was then*,'' but would have employed the present
tense and written '' *he is* in the State of Nevada.''   A
letter written to the decedent by his sister Mary pre-
sumably in January, 1895, bears out the conclusion that
the writer of the fragment was not speaking of the
year 1894, for she says: '' I am sorry you do not know
the whereabouts of brother Thomas,'' and again in
a letter dated May 28, 1895: '' I wish I could find out
where brother Tomes is  *  *  *.''   If the writer of
the fragment was speaking of a communication
received in or about the year that it was presumably

written, it would have been very likely that he knew, or thought that he knew, Thomas' address. It also appears from a letter written to the decedent by a daughter of his sister Mary in Republic in 1894 that the latter had at some time prior thereto heard of Thomas being in Honolulu. I am unable from the evidence above stated to find as a fact that Thomas was alive in the year 1894, when the fragment and the letter referred to were written. At most they show that at some time between the disappearance of Thomas from his home and the writing of the letters in question the decedent and his sister had heard from their brother.

Under such circumstances what, if any, finding may be made as to the fact and time of his death? In cases where estates in lands depended upon a life and the person upon whose life the term was limited had disappeared, as also in cases where one of the parties to a marriage had disappeared, it was recognized in England at an early date that often great hardship and injury was caused to the remainderman in the one case and to the husband or wife in the other through the inability to prove the death of the missing party. This resulted in the statutes with respect to tenancies for life (19 Car. II, chap. 6, § 2), and with reference to bigamy (1 Jacob, 1, chap. 2), in which it was provided that after the lapse of a certain number of years the person who had thus disappeared should, under certain conditions, be presumed to be dead. Section 841 of the Code of Civil Procedure reflects the former, while the latter is in a general way perpetuated in section 341 of the Penal Law, being chapter 88, Laws of 1909, and constituting chapter XL of the Consolidated Laws.

The presumption was thereafter extended to cases involving personal property. *McCartee* v. *Camel*, 1

Barb. Ch. 455; *Matter of Board of Education,* 173
N. Y. 321, citing *King* v. *Paddock,* 18 Johns. 141, 143;
*Eagle* v. *Emmet,* 3 Abb. Pr. 218, 220.  It is stated in
Stephen's Digest on the Law of Evidence (chap. 14,
art. 99) as follows: "A person shown not to have been
heard of for seven years by those (if any) who if he
had been alive would naturally have heard of him, is
presumed to be dead, unless the circumstances of the
case are such as to account for his not being heard of
without assuming his death; but there is no presump-
tion as to the time when he died, and the burden of
proving his death at any particular time is upon the
person who asserts it." See, also, Wigmore Ev. § 2531;
Thayer Prelim. Treat. Ev. at Com. Law, 319.  There
seems to be a difference of views as to whether or not
there is any presumption that such a person remained
alive during the seven-year period and died at its
expiration (Lawson Presump. Ev. rule 43; Jones Ev.
§ 62, note to *Butler* v. *Supreme Court, I. O. Foresters,*
26 L. R. A. [N. S.] 294), but that the presumption of
death now exists in this state is no longer open to
discussion in this court.

In *Matter of Wagener,* 143 App. Div. 286, it was
held that the general rule that an absentee who had not
been heard from for seven years may be presumed to
be dead at the expiration of the seven years for the
purposes of the distribution of his estate is well set-
tled, and in a case similar to this one the court, in
*Matter of Benjamin,* 155 App. Div. 233, in reversing
the court below, said: " This court has so recently
laid down rules as to the presumption of death arising
from long-continued and unexplained absence that no
further discussion of that question is now required."
In that case a woman thirty-four years of age disap-
peared in 1873. Careful search was made, but no
trace of her could be found, and the court in applying

Misc.]    Surrogate's Court, Bronx County, March, 1918.

the principles laid down in the cases cited remarked: "it seems clear that under the facts in this case Bridget Shannon must be presumed to have been dead at the expiration of seven years from the date of her disappearance, and at the latest by December 31, 1882, which is seven years from the latest date, by the most liberal calculation, that can be deemed to have been the time of her disappearance."

At the time the decedent disappeared he left in addition to his wife four children, ranging in age from six weeks to six years. He also had relatives living in the west and a brother here, who after his disappearance did much to relieve the distress of the abandoned family and to assist the mother in bringing up her children. All of the direct testimony is to the effect that he never communicated with his wife and children and never from the day of his disappearance was seen or heard of by them. The only evidence that his brother ever heard of him is the fragment of the letter hereinbefore referred to. If, then, we consider the question with a premise most favorable to the rights of Thomas, and assume that he was alive in the year 1894, when the fragment of the letter was apparently written (an assumption which, I think, is unwarranted for the reasons above stated) and go even further than that and assume that he was alive during the whole of that year, the conclusion would follow that he has not been seen or heard of by any member of his family since December 31, 1894.

Upon the facts stated in the affidavit and the record of the proceeding in New York county, as to all of which there appears to be no dispute between the parties, and under the authority of *Matter of Benjamin, supra,* this is a case in which the presumption that the decedent was dead after seven years from December 31, 1894, is fully justified, and this is the conclusion

Surrogate's Court, Bronx County, March, 1918.    [Vol. 103.

which I reach. The presumption that he died before the decedent is warranted also, in my opinion, by the fact that nothing was heard from him after the death of his brother. The latter was a man of some prominence in the community; he had been a battalion chief in the fire department and was more or less in the public eye. It seems to me that if Thomas had been alive he would undoubtedly have heard of his brother's death and would have come forward to obtain a part of his estate or at least to ascertain if he was entitled thereto. The fact that nothing was heard from him upon the demise of his brother indicates at least with some certainty that he had not been in communication with him up to the time of his death. Death being established, carries with it the presumption of intestacy. *Barson* v. *Mulligan,* 191 N. Y. 306.

It follows, therefore, that the appraiser was correct in assessing the tax upon the theory that Thomas Rowe, sometimes known as Thomas F. Rowe, predeceased his brother.

There is no evidence before me sufficient to raise a presumption that Michael Lynch is dead. I have been unable to find any evidence anywhere which shows when and under what circumstances he disappeared and what, if any, efforts were ever made to locate him. In this proceeding his share is therefore taxable.

It appears from the appraiser's report that he has fixed the value of the shares of the children of Thomas set forth in subdivision '' b '' upon the theory that they received one-eighth of the estate each, after the deduction of the widow's share, etc.; that is to say, upon the assumption that they took their deceased parent's share; that he valued each of the shares of the children of Mary Lynch set forth in subdivision '' c '' as one-tenth of the estate after the same deductions, the other one-tenth being divided among the grandnieces

and grandnephews set forth in subdivision " d," and that he did not consider that Michael Lynch, a nephew of the decedent, took anything. It would seem, therefore, that he also valued the interests of the children of Mary as though they took *per stirpes* the share which their mother would have taken and treated Michael as though he had died intestate, unmarried and without issue.

In holding thus he was in error. The decedent having died and having left only nephews, nieces, grandnephews and grandnieces, the nephews and nieces, as heretofore stated, share alike *per capita,* and the grandnephews and grandnieces take *per stirpes* the share which their parent would have taken if living. It follows that each of the nephews and nieces takes one-tenth and each of the grandnephews and grandnieces takes one-fiftieth of the distributable estate, after the deduction of the widow's share. It will be observed that in the case of the nephews, nieces, grandnephews and grandnieces, set forth in subdivisions " c " and " d," the value of their respective shares is the same as that found by the appraiser, except for a clerical error, not disputed, made in the case of the grandnephews and grandnieces, and except that Michael's interest should also be provided for.

This disposes of the appeals denominated "(1)," "(2)" and "(4)." The appeal numbered "(3)" was taken by a special guardian who had not been appointed to act for the infants in this proceeding, and hence had no standing in it. But the questions raised by his appeal were also urged by one of the other appellants and have been disposed of, so that it is not necessary further to consider the appeal by him.

I have the power to determine the cash value of the various shares and the amount of the tax in each case without appointing an appraiser (Tax Law, § 231,

formerly § 232, being Laws of 1909, chap. 62, and constituting Consol. Laws, chap. LX), and this has been construed to give me the same authority, after an order appointing an appraiser has been made. *Matter of Cameron,* 97 App. Div. 437; affd., 181 N. Y. 560; *Matter of Willets,* 119 App. Div. 119; affd., 190 N. Y. 527. There is no dispute as to the value of the estate, and I find it to be as stated in the report of the appraiser. Nothing therefore remains to be done except to calculate the value of the interest of each of the parties upon the basis above set forth. Under such circumstances it would be an idle ceremony to remit the report to the appraiser, and I therefore vacate the order assessing the tax and will proceed to fix the value of the respective shares of the parties, as of the date of the death of William Rowe, to wit, the 22d day of July, 1915.

The value of the share of the widow is $20,347.69, the exemption $5,000, and the amount taxable $15,347.69. The value of the share of each nephew and each niece is $7,808.36, the exemption $1,000, and the amount taxable $6,808.36, and the share of each grandnephew and each grandniece is valued at $1,561.67; the amount of the exemption is $1,000, and the amount taxable $561.67.

Decreed accordingly.