In the Matter of the Judicial Settlement of the Account of
MARY ROWE, as Administratrix, etc., of WILLIAM ROWE,
Deceased, by CONRAD HILBERT, as Administrator, etc., of
MARY ROWE, Deceased.

MARY L. LOTT and Others, Appellants; CONRAD HILBERT and
Others, Respondents.

First Department, July 1, 1921.

Executors and administrators — decree of Surrogate's Court adjudg-
ing absentee died prior to issuance of letters not res judicata
as to date of death and binding on surrogate of another county —
presumption of death — person presumed dead seven years after
being last heard from for purpose of establishing rights in
estate — evidence — insufficiency of proof to raise presumption
of death — deposit of share of estate to credit of proceeding.

A decree of a Surrogate's Court in proceedings to have an administrator
of the estate of an absentee appointed, is in no event an adjudication
with respect to the time of the death of the absentee and binding on the
surrogate of another county, in a proceeding in which the exact date is
material, since the *date* was not necessary to be established with exactness
and all the surrogate had to determine was that the absentee was pre-
sumed to be dead prior to the issuance of letters and accordingly fixed
the date as the date of the decree authorizing letters to issue.

It was incumbent on the administrator of the absentee, in order to sub-
stantiate his claim to a part of the brother's estate, to prove as a fact
that the absentee survived his brother.

The surrogate was well within the rules of presumption of death when he
applied the period of seven years to extend from certain dates which the
evidence showed were the last time any mention was made of any of the
absentee's relatives having heard from him and where the letters
undoubtedly referred to information received some years before their
dates.

The evidence did not show a diligent and systematic search to ascertain
whether a nephew of the deceased, who left his home many years before,
was alive, and it was correctly held that enough evidence was not intro-
duced to raise a presumption of his death, and it was proper to direct
that his share in his uncle's estate be paid to the chamberlain of the city
of New York to the credit of the proceeding.

APPEAL by Mary L. Lott and others from a decree of the
Surrogate's Court of the county of Bronx dated the 10th day

APP. DIV.— VOL. CXCVII.      29

of December, 1919, distributing estate *per capita* instead of *per stirpes*, recognizing decedent's nephew Michael Lynch surviving him, and from two transfer tax orders fixing five per cent tax instead of one per cent on Thomas Rowe's share.

*Philip S. Dean* of counsel [*George W. Ellis*, attorney], for the appellants, children and administrator of Thomas Rowe.

*John Davis*, special guardian of the respondents Catherine M. Lynch and others.

*Sidney Rossman*, attorney [*Julius M. Lowenstein* with him on the brief], for the respondents Bridget Langrick and others.

*Edward R. Koch*, special guardian for unknown persons.

*Henry W. Unger* of counsel [*Unger & Unger*, attorneys], for accountant and respondent Conrad Hilbert.

Page, J.:

The appeal in this proceeding from the decree directing the distribution of the estate of William Rowe, deceased, involves the review of the orders fixing the transfer tax on said estate.

Three questions are presented for determination: 1. Did Thomas Rowe die before or after his brother William Rowe? 2. Is Michael Lynch, a nephew of William Rowe, alive or presumed to be dead? 3. Is the decree of the Surrogate's Court, New York county, appointing an administrator of the estate of Thomas Rowe and fixing the date of his death as February 2, 1917, *res adjudicata* and binding on the surrogate of Bronx county?

William Rowe was born December 24, 1842, and died intestate in Bronx county July 22, 1915. His elder sister, Mary Lynch, a resident of Michigan, died before him leaving descendants, and his younger sister Margaret Sheridan died without issue before the decedent. His younger brother, Thomas Rowe, was born in 1844. In 1874 while employed as a laborer, first class, in the department of yards and docks in the Brooklyn Navy Yard, he abandoned his wife and four children, from six weeks to six years of age, without disclosed cause, and without making any provision for their support,

and has never since then communicated with them or any of them. William Rowe, the decedent, took care of the abandoned family, giving money for their support and interesting himself in their welfare like a father. His intimacy with them continued until the day of his death. After the death of William Rowe, the children of Thomas Rowe instituted and conducted a thorough inquiry and search for him, and not only failed to find him, but failed to locate him anywhere, at any time, since his abandonment of his family in 1874. Thereupon, in 1916, his children began a proceeding before the New York county surrogate to establish his death after that of his brother William Rowe and for the appointment of an administrator of his estate. In this proceeding it was not necessary to cite any one as all the children joined in the petition. (Code Civ. Proc. §. 2590.) The proceeding was referred to a referee before whom testimony was taken, and he made his report finding the petitioners entitled to a decree adjudging that Thomas Rowe, brother of William Rowe, is dead as of the date of the decree. Surrogate FOWLER approved and confirmed the findings and conclusions of the referee, and entered a decree thereon fixing the date of the death of Thomas Rowe as February 2, 1917; and in accordance with the prayer of the petition directed that letters of administration issue to the Lawyers Title and Trust Company.

Letters of administration on the estate of William Rowe were issued to his widow, Mary Rowe, by the surrogate of Bronx county on August 10, 1916. She died on October 25, 1916; letters of administration on her estate were issued to her brother on November 2, 1916; and a proceeding was thereafter commenced for the judicial settlement of her account as administratrix of the estate of William Rowe. A proceeding was thereupon had before a transfer tax appraiser, and the attorney for the children and the administrator of the estate of Thomas Rowe appeared and offered in evidence a complete record of the proceeding in the New York county Surrogate's Court and the decree fixing the date of the death of Thomas Rowe as February 2, 1917; and he contended that this decree established that Thomas Rowe survived William Rowe, and that his share of the estate should be paid over to his administrator, and was subject to a tax of one per cent

and entitled to an exemption of $5,000. The appraiser assessed the tax on the theory that Thomas Rowe predeceased William. An appeal was taken to the surrogate, who affirmed the findings of the appraiser.

It is asserted that the decree of the Surrogate's Court of New York county fixing the date of the death of Thomas Rowe was *res adjudicata* and binding on the parties to this proceeding. This contention is supported by the argument that the evidence in the two proceedings was identical; that the jurisdiction of the Surrogate's Court of New York county depended upon the fact of the death of Thomas Rowe; and, therefore, the adjudication cannot be assailed collaterally; and the head note to *O'Connor* v. *Huggins* (113 N. Y. 511) is quoted: " Although Surrogates' Courts are courts of special and limited jurisdiction, where jurisdiction to act exists their orders or decrees are conclusive until they are revoked or reversed on appeal. * * * That conclusiveness, in the absence of fraud or collusion, attaches in a case where a jurisdictional fact is in question and it appears there was proof with respect to its existence, upon which the surrogate decided."

In that case an attack was made upon the jurisdiction of the court to grant letters of administration, where the administrator had after proper application been permitted to sell real estate of the decedent to pay debts. The purchaser refused to take title and an action was brought to compel a specific performance of his agreement. The defense was that the Surrogate's Court did not have jurisdiction to grant letters because the decedent had no personal property within the county of the surrogate. In the instant case the jurisdiction of the surrogate to grant letters is not involved; the *date* of the death of Thomas Rowe was not necessary to be established, and all that the surrogate had to determine was that he was presumed to be dead prior to the issuance of letters; and the surrogate fixed the date as the date of the decree authorizing letters to issue. Letters of administration are not *prima facie* evidence of the death of the intestate; they are conclusive evidence of the authority of the person to whom granted and are sufficient to establish the representative character of the party who assumes to sue by virtue thereof. (*Carroll* v. *Carroll*, 60 N. Y. 121, 123.) The decree

of the Surrogate's Court merely decided that under the laws of the State Thomas Rowe was presumed to be dead. (*Marks* v. *Emigrant Industrial Savings Bank,* 122 App. Div. 661, 663.) In no event was it an adjudication with respect to the time of his death, and it was incumbent on the administrator to prove as a fact that Thomas survived William, in order to substantiate his claim to a part of William's estate. (*Williams* v. *Post,* 158 App. Div. 818, 820; *Eckersley* v. *Curran,* Id. 440, 442.) In the case under consideration it was necessary to determine the time when the presumption of death did arise. Although the evidence was the same before the Bronx county surrogate as before the New York county surrogate, the exact question to be determined was different. All the New York county surrogate was required to decide was whether Thomas was presumed to have died some time before letters were to be issued. The question to be determined by the Bronx county surrogate was whether Thomas died before July 22, 1915. The evidence was that the last time any mention was made of any of his relatives having heard from Thomas was in December, 1894, and January, 1895; and that the letters of those dates undoubtedly referred to information received some years before their dates. The surrogate was well within the rules of presumption of death when he applied the period of seven years to extend from those dates. The case of *Matter of Wagener* (143 App. Div. 286), in which this court laid down the rules as to the presumption of death arising from long-continued and unexplained absence, has subsequently been referred to as authoritative. (*Cerf* v. *Diener,* 148 App. Div. 150; *Matter of Benjamin,* 155 id. 233, 234.) The appellant suggests that the authority of these cases is impaired by the fact that *Cerf* v. *Diener* was reversed by the Court of Appeals (210 N. Y. 156). That case was a submitted controversy pursuant to section 1279 of the Code of Civil Proceedure and the Court of Appeals held that from the evidentiary facts submitted different conclusions might be drawn, and hence a case was not presented for the determination of the Appellate Division within the provisions relating to submitted controversies; and the Court of Appeals, therefore, reversed and dismissed the proceeding without prejudice to the bringing of an action.

First Department, July, 1921.              [Vol. 197

In the instant case we find that the decision of the surrogate is supported by the evidence.

The appraiser also held that there was a presumption that Michael Lynch, a nephew of the deceased, died before William Rowe. The surrogate reversed this finding and held that the evidence was insufficient to raise the presumption of his death. The only evidence submitted on this question was an affidavit of Margaret M. Lynch, a sister of Michael, stating that he left his home in or about the year 1887; that some years afterward several letters were received from him from somewhere in British Columbia and thereafter a letter from Mazatlan, State of Sinaloa, Mexico, stating that he intended to go into the mountains; and that he had never been heard from since; that at the time of the last-mentioned letter the bubonic plague was prevalent in that portion of Mexico, and that the Yaqui Indians were in revolt and were murdering citizens of various nationalities, including Americans; that she had caused inquiries to be made through officers of the United States of America, both in British Columbia and in Mazatlan, but had been unable to obtain any information as to his whereabouts.

The letters referred to as having been received from Michael Lynch were not produced nor was the date of their receipt given. Nor was it shown what inquiries were made of " officers of the United States " or who these officers were, nor were the replies of these officers produced. This failed to show diligent and systematic search to ascertain whether he was alive, and as the surrogate correctly held, was entirely insufficient to raise a presumption of death. (*Dunn* v. *Travis*, 56 App. Div. 317; *Matter of Wagener, supra.*)  It is significant that the learned counsel presented most circumstantial and detailed evidence as to the facts which tended to establish the death of Thomas Rowe, but contented himself with this insufficient statement as to Michael. It is safe to assume that nothing further could be presented than was. The surrogate has directed that the share of Michael Lynch be deposited with the chamberlain of the city of New York to the credit of the proceeding. At some future time an application can be made for the payment over of this fund. At that time further evidence can be produced. The rights

of no person are, therefore, adversely affected by this disposition of the matter at this time.

The decree and orders are affirmed, with costs to all parties appearing and filing briefs on this appeal payable out of the estate.

CLARKE, P. J., LAUGHLIN, SMITH and GREENBAUM, JJ., concur.

Decree and orders affirmed, with costs to all parties appearing and filing briefs on this appeal payable out of the estate.