PHEBE LANGRICK and Others, Plaintiffs, *v.* RICHARD ROWE and Others, Defendants.

In the Matter of the Application of PHEBE LANGRICK and Others, Appellants, to Compel MEYER WISAN, Respondent, to Complete the Purchase of 292 Alexander Avenue, Bronx, New York City.

In the Matter of the Application of PHEBE LANGRICK and Others, Appellants, to Compel PHILACTOS BROS. REALTY CORPORATION, Respondent, to Complete the Purchase of 222 East One Hundred and Seventy-eighth Street, Bronx, New York City.

First Department, March 20, 1925.

Partition — proceedings to compel purchasers to complete purchase — intestate died in 1915 without lineal descendants — intestate left surviving children of deceased sister and children of brother — brother disappeared in 1874, abandoning wife and children, and was not heard from later than 1894 — objection to completion of purchase based on contention that brother was living at date of death of intestate — in three proceedings in Surrogate's Court decision has been made that brother predeceased intestate — question is res judicata — no presumption that brother subsequently married and had children.

The purchasers of real property at a partition sale will be compelled to complete the purchase, notwithstanding they contend that they should not be compelled

so to do on the ground that a brother of the intestate, one of intestate's heirs, was living at the time of the death of the intestate and that neither he nor any possible children of his were made parties to the proceeding, since it appears that the brother abandoned his wife and children in 1874, when he was thirty years of age, and has not been heard from since some time prior to 1894, and that in proceedings for administration on his estate it was determined in 1917, after a hearing, that he was dead at that time, and letters of administration were issued, and in a transfer tax proceeding upon the estate of the intestate the same question was raised and the surrogate determined that the brother was dead at the time of the death of the intestate, and in a proceeding for a judicial settlement of the accounts of the administrator of the widow of the intestate as administratrix of the intestate, it was again determined, which determination was affirmed by the Appellate Division and the Court of Appeals, that the brother predeceased the intestate. The question is now *res judicata.*

The mere fact of the disappearance of the brother and the death of his wife in 1890, leads to no presumption of any subsequent marriage on his part, and even if it were held that he was still living in 1890, that would not lead to the presumption that he has children living from a subsequent marriage.

APPEAL by Phebe Langrick and others from an order of the Supreme Court, made at the Bronx Special Term and entered in the office of the clerk of the county of Bronx on the 23d day of January, 1925, denying their motion for an order directing Meyer Wisan, purchaser at the judicial sale, to complete the purchase and take title; also from an order entered in said clerk's office on the same day granting the motion of Meyer Wisan for an order directing the referee to return the deposit and relieving him of his purchase; and also from an order entered in said clerk's office on the same day denying plaintiffs' motion to compel Philactos Bros. Realty Corporation, purchasers at the judicial sale, to complete the purchase and take title.

The action is one in partition. Separate motions were made by the plaintiffs to compel Meyer Wisan to specifically perform a contract to purchase the premises known as 292 Alexander avenue, Bronx, and to compel Philactos Bros. Realty Corporation, a New York corporation, to specifically perform a contract to purchase the premises known as 222 East One Hundred and Seventy-eighth street, Bronx. A counter motion was made by Meyer Wisan to be relieved of his agreement to purchase the Alexander avenue parcel, and for the return of his deposit. All three motions were heard together. The motions to compel the buyers to accept the titles tendered were denied and the motion of the purchaser Wisan for the return of his deposit was granted.

The refusal to take title is on the ground of failure of any judgment rendered in the action of *Langrick* v. *Rowe*, particularly the interlocutory judgment dated December 21, 1923, to provide for one Thomas Rowe if living, or his successors in interest generally if dead, and since said Thomas Rowe is entitled to one-half interest

in each parcel if he is living, and since his successors in interest generally are entitled to an interest in the property if he is dead, the purchasers contended that the titles tendered were unmarketable. The court below found for the purchasers.

*Sidney Rossman* [*Charles A. Strauss* of counsel; *Sidney Rossman* and *Alexander L. Strouse* with him on the brief], for the appellants.

*Harold Wisan*, for the respondents.

BURR, J.:

William Rowe died on the 22d day of July, 1915, intestate, a resident of Bronx county. At the time of his death he was the owner in fee of 292 Alexander avenue, 222 East One Hundred and Seventy-eighth street, both parcels in Bronx county, 286 Broome street, county of New York, and two parcels of real estate at Rockaway Park, county of Queens. William Rowe was married to Mary Rowe, who died in October, 1916, and whose dower interest in the real property has been duly liquidated. No lineal descendants survived. He had two sisters and a brother. His younger sister, Margaret Sheridan, died without issue in 1871. His elder sister, Mary Lynch, died in 1911, leaving her surviving children and grandchildren.

Thomas Rowe, a brother of the decedent, was born in 1844; and in 1874, while employed as a laborer, first class, in the Brooklyn Navy Yard, abandoned his wife and four children without disclosed cause and without making any provision for their support, and has never since then communicated with them or any of them. At the time of his disappearance Thomas Rowe was married to Margaret Reilly Rowe. She died in 1890.

The four children of Thomas Rowe are Richard Rowe, William S. Rowe, Thomas F. Rowe and Mary L. Lott, all of whom are parties to this action.

If Thomas Rowe survived William Rowe, the property would be divided as follows: One-half to Thomas Rowe, if living, and if Thomas Rowe had since died, to his representatives in title. The remaining one-half share would be inherited by the descendants of Mary Lynch.

If Thomas Rowe predeceased William Rowe, having married after the death of his wife Margaret Reilly Rowe, which death occurred in 1890, and had issue by this second marriage, then parties other than the known ones in the action may have an interest in the real property and the property would pass *per capita*. It could not be adjudged, however, what the rights and interests of the parties to the real property are and a direction would properly have to be made that all the proceeds of sale should be permitted

to be deposited in the city chamberlain's office. This is the contention of the respondent Philactos Bros. Realty Corporation.

If Thomas Rowe predeceased William Rowe, leaving him surviving no other issue except the four known children, then the property would pass *per capita* as found by the referee and as set forth in the interlocutory judgment, that is, in tenths; one-tenth to each of the four known children of Thomas Rowe, and six-tenths would be divided among the six branches of the descendants of Mary Lynch.

Shortly after the death of the decedent, William Rowe, this action was instituted for the partition and sale of the real property of which he died seized and possessed. While this action was pending the children of Thomas Rowe made an *ex parte* application to the surrogate of New York county for the issuance of letters of administration upon his estate. One of the surrogates of New York county referred the matter to a referee. The report of the referee was confirmed by order of the surrogate of New York county dated February 2, 1917, in which order it was adjudged and decreed that the said Thomas Rowe or Thomas F. Rowe " be, and he hereby is presumed to be dead as of the date hereof; " that he died intestate, and that letters of administration on his estate be issued to the Lawyers Title and Trust Company.

The record in these proceedings which have heretofore been before this court were offered in evidence before the referee in partition herein.

Inquiry as to the date of death of Thomas Rowe next came before the surrogate of Bronx county upon the determination of the transfer tax upon the estate of William Rowe. This involved the fixing of the tax on the succession both to the personal and real estate which is the subject of this action. The children of Thomas Rowe contended before the surrogate of Bronx county that Thomas Rowe survived William Rowe. The surrogate determined that Thomas Rowe predeceased his brother William Rowe leaving him surviving his four known children, and directed the assessment of the tax accordingly. In that proceeding the surrogate said: " The presumption that he [Thomas Rowe] died before the decedent is warranted also, in my opinion, by the fact that nothing was heard from him after the death of his brother. The latter was a man of some prominence in the community; he had been a battalion chief in the fire department and was more or less in the public eye. It seems to me that if Thomas had been alive he would undoubtedly have heard of his brother's death and would have come forward to obtain a part of his estate or at least to ascertain if he was entitled thereto."

The order assessing the tax was offered in evidence as an exhibit before the referee in partition.

The question of the date of the death of Thomas Rowe then came before the surrogate of Bronx county upon the application of Conrad Hilbert, as administrator, etc., of Mary Rowe, deceased, widow and administratrix of William Rowe, deceased, for the judicial settlement of the accounts of Mary Rowe, deceased. In an opinion by the surrogate (*Matter of Rowe*, N. Y. L. J. May 5, 1919, p. 432) the surrogate found that Thomas Rowe predeceased William Rowe leaving him surviving no other next of kin except his four children, Richard Rowe, William S. Rowe, Thomas F. Rowe and Mary L. Lott, and accordingly directed the distribution of the personal property *per capita*, that is, one-tenth to each of the children of Thomas Rowe and one-tenth to each of the branches of Mary Lynch. A decree was accordingly entered dated December 10, 1919, which decree was offered in evidence before the referee in partition herein. An appeal was taken to this court by the children of Thomas Rowe from the decree of the surrogate adjudging the rights and interests of the parties in and to the personal property of William Rowe, deceased; also bringing up for review the transfer tax orders. This court, by PAGE, J. (*Matter of Rowe*, 197 App. Div. 449, 454), having under review both the decisions of the surrogate of New York county and the surrogate of Bronx county, found that " the decision of the surrogate [of Bronx county] is supported by the evidence."

The children of Thomas Rowe appealed to the Court of Appeals from the order of this court, and that court affirmed the decree and orders without opinion (*Matter of Rowe*, 232 N. Y. 554). Pending the determination of the question of the death and time of death of Thomas Rowe by the surrogate, this action was held in abeyance.

The complaint herein proceeds under the theory that the plaintiffs are each seized and possessed in fee simple of an undivided one-tenth part or share of the premises as tenants in common with certain defendants, if Thomas Rowe predeceased William Rowe and left him surviving no issue other than the defendants Richard Rowe, William S. Rowe, Thomas F. Rowe and Mary L. Lott. If Thomas Rowe survived William Rowe, then Thomas Rowe, if living, or his successors in interest, if dead, are seized and possessed of an undivided one-half interest in and to the real property.

The children of Thomas Rowe answered and again claimed that Thomas Rowe survived William Rowe. The Lawyers Title and Trust Company, as administrator of the goods, chattels and credits of Thomas Rowe, deceased, also answered. The amended

summons was directed to be served by publication and the directions of the order of publication were duly complied with. By order dated March 26, 1923, the issues in this action were referred to a referee " to hear and determine the issues raised by the pleadings, to take proofs of the plaintiffs' title and interest in the premises and of the several matters set forth in the complaint, and to ascertain and report the rights, shares and interests of the several parties in the premises, and an abstract of the conveyances under which the same are held, and to report whether the said property or any part thereof is so circumstanced that a partition thereof cannot be made without great prejudice to the owners," and if he arrives at a conclusion that a sale of the whole of the premises or any lot or separate parcel thereof will be necessary, to specify the same in his report together with the reasons, which render a sale necessary.

Before the referee, Richard Rowe, son of Thomas Rowe, called as a witness, testified that Thomas Rowe disappeared in or about the year 1873. Thomas Rowe was at that time residing in New York with his wife, Margaret Reilly Rowe, and children. He further testified that the efforts to locate Thomas Rowe " are more particularly set forth in pages 80 to 156 in the case on appeal from Bronx County Surrogate's decree." (*Matter of Rowe,* 197 App. Div. 449.) These efforts have been properly characterized by this court as " a thorough inquiry and search," for which reason it is unnecessary to reiterate here the efforts there shown to have been made to locate Thomas Rowe. These proceedings setting forth the efforts made to locate Thomas Rowe were offered in evidence before the referee in partition and are part of the papers on appeal from these orders. Richard Rowe, one of the children of Thomas Rowe, further testified that his mother, Margaret Reilly Rowe, died in 1890, that he had no further information as to the whereabouts of his father except that contained in the record on appeal in *Matter of Rowe* (197 App. Div. 449) and that he had not heard anything as to his father's whereabouts up to April 11, 1923, the date upon which his testimony was taken.

Margaret Matilda Lynch, a resident of Chicago, and a daughter of the late Mary Lynch, the sister of Thomas Rowe and William Rowe, testified that the fragment of the letter of William Rowe of December 3, 1894, in evidence, which letter has heretofore been before this court, was received by her; that it came from her uncle William; that, after the death of William Rowe, when called upon for evidence, she was in St. Paul, went home and, among the books which had been packed at her brother's house, she shook out this fragment which contained the following: " received a letter from

Brother Thomas. He was then in the State of Nevada. I trust He is well & Happy. His wife has gone to Heaven his three Sons & one daughter reside in this City. Richard, Mary, Thomas & William, the two former are married. You Have an auntie Mary No children Mrs. Rowe joins me in Sending love to all our relatives in Michigan Wisconsin & Oregon. I will Now Say good bye & God Bless you all, truly Yours    William Rowe," in the handwriting of William Rowe; that evidently her mother had carried it in her bag "until it got dilapidated like this." Preceding the fragment, there were the words "Many years ago." "Many years ago, I received a letter" is the substance of that sentence. The letter and envelope in which it came were offered in evidence. In a letter found among the effects of William Rowe, after his decease, was one dated December 6, 1894, written by Margaret Lynch in which she wrote: "When you write, tell us Uncle Thm's address. Mother says when she heard from him last he was at Honolulu;" a letter from Mary Lynch to William Rowe, also found among William Rowe's effects, dated January 8, 1895, states: "I am sorry you do not know the whereabouts of brother Thomas. I hope his children are well." This documentary evidence was discussed both by Mr. Justice PAGE in *Matter of Rowe* (197 App. Div. 449, 453) and also by the surrogate in *Matter of Rowe* (103 Misc. 111, 117, 118).

The adjudication of the rights and interests of the parties in the real property, as set forth in the interlocutory judgment, is amply supported by the evidence.

The question as to whether Thomas Rowe died before or after his brother William Rowe was squarely before this court and the Court of Appeals, and this court found that the decision of the surrogate of Bronx county was supported by the evidence. The testimony before the referee in partition was practically the same as that which was before the Surrogate's Court when the decision was rendered adjudging the right, title and interest of the parties to this action in the personal property which William Rowe possessed at the time of his death and also fixed the method of computing the transfer tax on the real and personal property of William Rowe.

The documentary evidence referred to by this court in *Matter of Rowe* (197 App. Div. 449, 453): "The last time any mention was made of any of his relatives having heard from Thomas was in December, 1894, and January, 1895; and that the letters of those dates undoubtedly referred to information received some years before their dates," was offered in evidence before the referee in partition, as was the evidence in the New York county proceedings.

In addition to this, Richard Rowe, the son of Thomas Rowe, testified that no further information had been received as to the whereabouts of their father up to April, 1923, seven years after the previous proceeding.

The mere fact of the disappearance of Thomas Rowe and the death of his first wife in the year 1890 leads to no presumption of any subsequent marriage on his part even if the court were to hold that Thomas Rowe is presumed to have been alive in 1890. With no evidence whatever on the subject, the court will not assume that the marriage relationship between Thomas Rowe and Margaret Rowe was severed or dissolved subsequent to his disappearance in 1874.

If the court presumes that Thomas Rowe died within seven years from the time of his disappearance in 1874 (1 R. S. 749, § 6; Code Civ. Proc. § 841; Civ. Prac. Act, § 341), and the evidence being unquestioned that his wife survived until 1890, the presumption becomes conclusive that his four children, who are defendants herein, are the only ones who succeeded to or may claim any share in the estate of William Rowe which Thomas Rowe would have had if living.

We find no authority for extending the life of Thomas Rowe until 1915 by presumption, and still less for holding that Thomas Rowe may still be alive in 1925. Thomas Rowe will be presumed to have died at the latest within seven years of the time when he was mentioned as having been heard from, which was prior to 1894.

The question as to whether Thomas Rowe predeceased William Rowe must now be regarded as *res adjudicata*. (*Matter of Rowe*, 103 Misc. 111; affd., 197 App. Div. 449; affd. 232 N. Y. 554.) The known children of Thomas Rowe are parties to this action, and the interlocutory judgment determines their rights. There is no evidence in the record that Thomas Rowe survived his wife, and there is no evidence of a remarriage or the birth of any children. In *Cambrelleng* v. *Purton* (125 N. Y. 610) Judge O'BRIEN, writing for the court, stated: " If the existence of the alleged fact which is claimed or supposed to constitute a defect in or cloud upon the title is a mere possibility or the alleged outstanding right is but a very improbable or remote contingency, which, according to ordinary experience, has no probable basis, the court may in the exercise of a sound discretion, compel the purchaser to complete his purchase."

In *Ferry* v. *Sampson* (112 N. Y. 415) the court said: " It is well settled that a purchaser on a judicial sale is entitled to a marketable title, that is, a title free from reasonable doubt; and courts are not disposed to compel a purchaser to take title where a

doubtful question of fact relating to an outstanding right is not concluded by the judgment under which the sale is made. (*Fleming v. Burnham,* 100 N. Y. 1, and cases cited.)

"But the rule is not absolute that a disputable fact, not determined by the judgment, is in every case a bar to the enforcement of the sale. It depends in some degree on discretion. If the existence of the alleged fact which is supposed to cloud the title is a possibility merely, or the alleged outstanding right is a very improbable and remote contingency, which, according to ordinary experience, has no probable basis, the court may, I suppose, compel the purchaser in such a case to complete his purchase. It is needless to say that the discretion is to be carefully and guardedly exercised, and only where the case is free from reasonable doubt. We think the circumstances in this case point unequivocally to the death of Robert Waite Armstrong long before the sale in partition, leaving no widow or children surviving, and that it is beyond reasonable doubt that his title passed by his death to his mother, and his brother and sisters and their descendants. Judge DENIO had occasion to consider a somewhat similar question in *New York P. E. Public School* v. *Davis* (31 N. Y. 587, 588); and Chancellor KENT in *McComb* v. *Wright* (5 Johns. Ch. 263), enforced specific performance of a contract for the sale of land on the presumption of death without issue of John Ogilvie, an absentee for 'over forty years.' On the whole, we think the objection of the purchaser was untenable, and that, according to the rules of equity applied in such cases, he ought not to have been released from his purchase."

In view of the prior decision of this court affirmed by the Court of Appeals, and upon the evidence before the referee in this case now before this court, we find that Thomas Rowe predeceased William Rowe; that the rights and interests of the parties to the real property are properly set forth in the interlocutory judgment herein, and that, therefore, the title rendered to the purchasers by the referee is a good and valid title to the property in question.

Accordingly the orders appealed from should in each case be reversed, with ten dollars costs and disbursements to appellants and respondents, to be paid out of the estate. The application to compel performance should in each case be granted, and each of the purchasers is directed to complete the purchase in accordance with the terms of sale as of the time when title should have been closed.

DOWLING, MERRELL, McAVOY and MARTIN, JJ., concur.

Orders reversed, with ten dollars costs and disbursements to appellants and respondents, payable out of the estate; the appli-

cation to compel performance in each case granted, and each of the purchasers directed to complete purchase in accordance with the terms of sale as of the time when title should have been closed. Settle orders on notice.